801 F.2d 242
 21 Fed. R. Evid. Serv. 819
 Leroy Alexander BECK, Petitioner-Appellant,
v.
Stephen NORRIS, Commissioner of Corrections, State of
Tennessee; and Odie Jones, Warden of the Morgan
County Regional Facility at Wartburg,
Morgan County, Tennessee,
Respondents-Appellees.
 No. 85-6043.
 United States Court of Appeals,
Sixth Circuit.
 Argued Aug. 5, 1986.
Decided Sept. 17, 1986.
 
 William H. Ortwein (argued), Ortwein, Roddy and Associates, Chattanooga, Tenn., for petitioner-appellant.
 James Thompson (argued), W.J. Michael Cody, Atty. Gen. of Tenn., Nashville, Tenn., for respondents-appellees.
 Before MARTIN and GUY, Circuit Judges; and SUHRHEINRICH, District Judge.*
 RALPH B. GUY, Jr., Circuit Judge.
 
 
 1
 Petitioner, Leroy Beck, appeals the district court's denial of his petition for a writ of habeas corpus. Beck raises two issues: that he was deprived of his rights under the due process clause and the sixth amendment when the state court allowed testimony by witnesses who had undergone hypnosis, and that he was deprived of a fair trial by a jury instruction which unconstitutionally shifted the burden of proof to petitioner on the issue of malice. For the reasons stated below, we affirm.
 
 
 2
 Petitioner was convicted of armed robbery and second degree murder on June 25, 1983, in Bradley County Circuit Court. The evidence at trial showed that on February 14, 1982, a man entered a Holiday Inn in Bradley County and committed an armed robbery. In the course of the crime, several employees of the Southern Railroad entered the Inn. The robber pointed the gun at them and ordered them to "hit the floor." One of the men asked, "Is this a joke?" The robber shot that man, who later died from the wound. Several witnesses identified petitioner as the perpetrator, and it is their testimony that petitioner first challenges.
 
 
 3
 Five eyewitnesses were interviewed on the day of the crime who gave descriptions of the gunman. At that time the interviews yielded a general description of a black man in his mid-twenties to early thirties; five feet, six inches to five feet, eight inches in height; weighing 130 to 140 pounds; with a space between his teeth; and with three to four days growth of beard. Later that day, the witnesses participated in the drawing of a composite of the gunman. The composite was circulated to various law enforcement agencies, but did not result in identification of a suspect.
 
 
 4
 On February 16, 1982, the witnesses were individually hypnotized by Carl Siegler, a psychologist and an investigative hypnotist, to attempt to elicit any additional details concerning the crime. Following this procedure, the witnesses participated in the drawing of a second composite of the gunman. This second composite was again circulated to various law enforcement agencies and an inmate at the Bradley County Jail identified Beck as the man depicted in this composite.
 
 
 5
 Petitioner challenges the testimony of those witnesses who underwent hypnosis, arguing that hypnosis erases the individual's pre-hypnotic memory and therefore prevents effective cross-examination and effective representation of counsel. Petitioner does not expand on his argument, so it is unclear whether he is challenging the witnesses' testimony as a whole, or only their identification of him. Judging from the authorities cited by petitioner, he appears to object to the witnesses' testimony as a whole due to the fact that hypnotized persons become extremely suggestible and their recollections thereby become "contaminated."
 
 
 6
 The State of Tennessee allows the admission of testimony by witnesses who have been previously hypnotized. State v. Glebock, 616 S.W.2d 897 (Tenn.Crim.1981) (adopting Ninth Circuit rule of United States v. Awkard, 597 F.2d 667 (9th Cir.), cert. denied, 444 U.S. 885, 100 S.Ct. 179, 62 L.Ed.2d 116 (1979) holding fact that witness has been hypnotized affects credibility but not admissibility). The Glebock court prescribed certain procedures to insure that statements made after hypnosis are the product of the subject's own recollections, rather than of recall tainted by suggestions received while under hypnosis. The court required that, at a minimum, complete stenographic records of interviews of the hypnotized persons who testify must be maintained and, if possible, the hypnotic interview should be recorded on audio or video tape. At trial, the expert who hypnotized the witness must lay a foundation before the testimony of a previously hypnotized witness will be allowed. The expert should describe the manner in which he conducted the hypnotic session, without relating to the jury what the witness had told him during hypnosis. The expert witness should also be asked to testify as to whether one under hypnosis has an increased capacity for recollection, what could bring on confabulation, and whether one who is or has been hypnotized has the capacity for telling deliberate falsehoods or lies.[1] 616 S.W.2d at 904-905.
 
 
 7
 Beck does not assert that these procedures were not properly followed. He does claim that the use of testimony by witnesses who had been the subjects of hypnosis deprived him of due process of law, the right of confrontation, and the right to effective assistance of counsel.
 
 
 8
 We cannot agree that under the circumstances presented here the use of testimony of witnesses who had been hypnotized deprived defendant of a fair trial. First, there is evidence to refute petitioner's claim of undue suggestibility. For instance, the composite drawings made before the hypnosis session and after the hypnosis session were very similar. Although the hypnosis apparently aided in sharpening the drawing of petitioner, the similarity between the two drawings indicates that the second composite was not the product of suggestibility. Indeed, there was no motivation to influence the hypnotized subjects, as no suspect for the crime had yet been identified. Second, on the evening of the crime, the witnesses individually viewed a photographic array consisting of approximately 100 photographs of possible suspects. Petitioner's photograph was not included in the array. The witnesses made no identification at that time. Finally, another witness, Donna Clark, was not subjected to hypnosis and did not participate in the identification procedures utilized with the crime witnesses. She identified petitioner as the man she saw run from the entrance of the motel immediately after the commission of the crimes.
 
 
 9
 Moreover, the procedures followed in this case, in accordance with Glebock, worked to safeguard petitioner's right to a fair trial. The hypnotic sessions with the witnesses were videotaped. At trial, Mr. Carl Siegler, the consulting psychologist who conducted the hypnotic sessions in this case, testified as to the procedure followed. His statements laid a proper foundation under Glebock for the admissibility of the subsequent testimony of the witnesses who had been hypnotized.
 
 
 10
 In addition, since replays of the videotapes of the hypnotic sessions were shown, the jury was able to see what happened during these sessions and what statements were made to the potential witnesses before they actually testified at trial. The person administering the hypnosis was extensively cross-examined concerning these sessions, and the witnesses themselves were again extensively examined.
 
 
 11
 The procedures utilized were adequate to protect petitioner's right to a fair trial. Furthermore, we note that petitioner, other than simply challenging the admission of the witnesses' testimony in general, has failed to specify how he was deprived of a fair trial. Although he apparently believes that hypnotically refreshed testimony should never be allowed, he has not alleged that the witnesses' testimony here was so contaminated by the hypnotic sessions, or that their identification was the product of hypnotic suggestion, so as to deprive him of a fair trial.
 
 
 12
 Petitioner's claims that he was deprived of the right of confrontation and the right to effective assistance of counsel are similarly obscure. Petitioner had ample opportunity to cross examine both the hypnotist and the witnesses who had been hypnotized as to the circumstances and procedures surrounding the hypnotic sessions. Petitioner's claim of ineffective assistance of counsel also has no basis in the record. Consequently, the district court did not err in refusing to grant the petition for habeas corpus on this claim.
 
 
 13
 Petitioner also argues that he was deprived of due process of law based on the following jury instruction:
 
 
 14
 All homicides are presumed to be malicious in the absence of evidence which would rebut the implied presumption. Thus, if the state has proven beyond a reasonable doubt that a killing has occurred, then it is presumed that the killing was done maliciously, but this presumption may be rebutted by either direct or circumstantial evidence, or by both, regardless of whether the same be offered by the defendant, or exists in the evidence of the state.
 
 
 15
 Likewise, if a deadly weapon is handled in a manner so as to make the killing a natural or probable result of such conduct, then there is raised a presumption of malice sufficient to support a conviction of murder in the second degree unless it is rebutted by other facts and circumstances.
 
 
 16
 * * *
 
 
 17
 * * *
 
 
 18
 The question of whether the alleged killing was done with malice is for you to determine from the entire case, and you should look to all the facts and circumstances developed by the evidence to determine whether the state has proven beyond a reasonable doubt the existence of malice.
 
 
 19
 (App. 16-17.) Petitioner challenges this instruction under Sandstrom v. Montana, 442 U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979), as impermissibly shifting the burden of persuasion from the state to prove malice beyond a reasonable doubt. The United States Supreme Court recently held that the harmless error analysis of Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), may be applied when an instruction is challenged under Sandstrom. Rose v. Clark, --- U.S. ----, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986). The question is whether on the whole record the error is harmless beyond a reasonable doubt. Id. at 3108-3109. "[T]he inquiry is whether the evidence was so dispositive of intent that a reviewing court can say beyond a reasonable doubt that the jury would have found it unnecessary to rely on the presumption." Id. at 3109 (quoting Connecticut v. Johnson, 460 U.S. 73, 97 n. 5, 103 S.Ct. 969, 983 n. 5, 74 L.Ed.2d 823 (1983) (Powell, J., dissenting) ).
 
 
 20
 Although the Rose Court held that the harmless error inquiry is not necessarily a function of the type of defense raised at trial, in the instant case, because intent was not in issue, the defense raised must be considered to determine if the alleged error was harmless. The sole question at the trial was whether Beck was a participant in the crime, not whether he acted with any particular intent. Assuming that the statement of presumed malice violated Sandstrom, we find the error to be clearly harmless on the record as a whole since we are convinced, beyond a reasonable doubt, that the jury found it unnecessary to rely on the presumption.
 
 
 21
 For the reasons stated above, the judgment of the district court is AFFIRMED.
 
 
 
 *
 Honorable Richard F. Suhrheinrich, United States District Judge, Eastern District of Michigan, sitting by designation
 
 
 [1]
 At trial, Mr. Siegler described confabulation as making things up, or fantasizing, rather than drawing from actual memory. He stated that this usually occurs out of a desire to please the hypnotist, and that it normally occurs only after several sessions