**Derrick HENDERSON, Appellant,**

v.

**UNITED STATES, Appellee.**

**No. 84–1461.**

District of Columbia Court of Appeals.

Argued July 2, 1986.
Decided June 18, 1987.

Peter H. Meyers, Washington, D.C., appointed by the court, for appellant.

Laura Ross Blumenfeld, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., and Michael W. Farrell and G. Paul Howes, Asst. U.S. Attys., Washington, D.C., were on brief, for appellee.

Before FERREN, TERRY, and STEADMAN, Associate Judges.

FERREN, Associate Judge:

■ Appellant was convicted of one count of malicious destruction of property, D.C.Code § 22–403 (1981) (misdemeanor), and sentenced to prison for 120 days, with work release. He asserts four reasons for reversal: (1) the trial court improperly instructed the jury there was no dispute that the restaurant window was broken with malice; (2) the court erred in denying his motion to suppress a photographic identification; (3) the trial court improperly admitted photographs of the restaurant; and (4) the prosecutor's closing arguments were improper. We agree that the court's instruction was an error of constitutional magnitude, but, under the particular facts of this case, we conclude that it was harmless beyond a reasonable doubt. We also agree that the photographic array was unduly suggestive and that the court failed to determine whether the photographic identification was reliable nonetheless. We therefore must remand for the trial court to conduct this inquiry. Based on its finding, the trial court shall decide whether that identification should be suppressed

and, if so, whether appellant is entitled to a new trial.[1]

## I.

At about 11:25 p.m. on April 29, 1984, appellant and a female friend entered the Wah-Sing Restaurant at 2521 Pennsylvania Avenue, S.E., and sat down in the dining room. Chiu Wong, the manager, told appellant that the dining room closed at 11:30 because the staff needed time to clean up. He noted, however, that carry-out service was available until midnight. Appellant explained that he did not want carry-out service, but Wong insisted appellant could not be served if he remained. Appellant became angry and left.

He returned a few moments later to complain that the sign said the restaurant closed at 12:00; Wong repeated that the carry-out, not the restaurant, closed at 12:00. Appellant again left the restaurant. Wong saw him standing in front of the window, about ten feet from Wong. Wong turned his back for two or three minutes and then heard the window break, although he did not actually see it happen. Wong and his father went outside, and Wong saw appellant running to a car which was then driven away. Wong saw the car's license plate number, which he gave to the police.

A few days after the incident, a policeman, Officer Cartledge, came to the restaurant to show Wong an array of eight or nine photographs. Cartledge testified that appellant's photograph was included in the array because the police had identified him as the owner of the car with the license plate number that Wong had given the police. At trial, Wong confirmed he had identified appellant from the photo array; he also identified appellant in court. Specifically, Wong testified that he had picked out appellant's photograph because he had recognized him as the man who had argued with him and had been in the parking lot after the window was broken. Wong admitted he had told the officer that he was not very sure of the identification, but he insisted at trial that he was sure. "That's one picture I look at. That's the right man.... I know the man I argue with before." Wong also identified a police photograph of a portion of cinder block which he said had broken the window.

## II.

■ Appellant argues that when the court instructed the jury "there is no evidence to show that the window was broken without malice," and that "the only genuine dispute in the case is the one of identity," the court improperly invaded the province of the jury and, in effect, directed a partial verdict of guilty on the element of malice. We disagree, but we do conclude under the circumstances that the court's comments, in effect, impermissibly shifted the burden of persuasion as to malice from the government to appellant.

In its instructions to the jury, the court did correctly explain the jury's function as the exclusive factfinder:

And now your function. The function of the jury, essentially, ladies and gentlemen, it is to determine the facts. You are the sole and exclusive judges of the facts. You alone determine the weight, the effect and the value of the evidence,

---

1. We reject appellant's contention that the trial court improperly admitted four photographs of the restaurant without a proper foundation. The admission of photographs is "within the sound discretion of the trial judge." *Rich v. District of Columbia,* 410 A.2d 528, 531 (D.C. 1979) (quoting *March v. United States,* 362 A.2d 691, 704 (D.C.1976)). The test of admissibility "is whether the photographs accurately represent the facts allegedly portrayed by them." *Id.* (quoting *Simms v. Dixon,* 291 A.2d 184, 186 (D.C.1972)). The government offered the four photographs to depict the restaurant's broken window after the events of April 29. Wong, who had not seen the photographs before trial,

testified that they were all photographs of his restaurant and were a fair and accurate representation of the way the window looked on the 29th of April. The photographs were properly admitted at trial. *Id.* at 532.

Appellant's argument that his conviction must be set aside because of prosecutorial misconduct also has no merit. Assuming, without deciding, that the prosecutor did engage in misconduct during closing arguments, the alleged misconduct did not cause appellant "substantial prejudice" warranting reversal. *Jaggers v. United States,* 482 A.2d 786, 796 (D.C.1984); *Reese v. United States,* 467 A.2d 152, 156 (D.C.1983).

as well as the credibility or the believability of the witnesses.

A few minutes later, the court defined the elements of malicious destruction of property.[2] The court, however, then added the following comments:

> Ladies and gentlemen, the only disputed element in this case involves the one of identification. That is, whether it was the defendant who broke the window. There is no dispute that the window was broken and there's no dispute that the window wasn't owned by the complainant.
>
> There's no dispute that the window had value, and there is no evidence to show that the window was broken without malice. All of the evidence in the case is that whoever broke the window broke it maliciously by throwing the portion of the cinder block through the window, so the only genuine dispute in the case is the one of identity.
>
> And so I want to give you this special instruction on identification.

Appellant argues that this case is "almost identical" to *Minor v. United States,* 475 A.2d 414 (D.C.1984), where we reversed convictions of receiving stolen property valued at more than $100. *See* D.C. Code § 22-2205 (1981). In *Minor,* the trial court instructed the jury that, "as a matter of law, I find that the value is in excess of $100." 475 A.2d at 415. Although evidence was introduced tending to prove that the purchase prices for the items "well exceeded $1,000," we held that, because "the value element of the crimes charged was removed from the jury's province," the trial court erroneously had imposed a "partial directed verdict, regarding an essential element of the crime." *Id.* at 416, 417. In *Minor,* therefore, we reversed because the trial court had explicitly removed an issue from the jury. *Id.; accord, United States v. Gollin,* 166 F.2d 123, 125–27 (3d Cir.),

*cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948). Here, in contrast, the trial court unquestionably expressed its view that all the evidence indicated malice, but the court left ultimate resolution of that issue to the jury. The court told the jury that it was the "sole and exclusive" judge of the facts, instructed as to the elements of the crime (including malice), did not make a finding of malice "as a matter of law," and did not otherwise instruct the jury that the issue of malice was foreclosed.

Our inquiry does not end here, however, for, although the trial court did not partially direct a verdict as a matter of law, its expressed opinion that the window had been broken with malice obviously created a substantial barrier for the jury to overcome before it could find no malice. When a trial court, with the power of its office and implied expertise, says to the jury, in effect, "I think that all the evidence shows the window was broken maliciously and that there is no evidence to the contrary," without immediate qualification as to the jury's role, the situation falls somewhere between a partially directed verdict and the jury's freedom to find the facts—a situation with constitutional implications. We have held that "a trial judge may comment upon the evidence in a criminal case so long as the ultimate resolution of factual issues is clearly left to the jury." *Hall v. United States,* 383 A.2d 1086, 1088 (D.C.1978). We believe the trial court's comment upon the evidence here, while not formally withdrawing the issue of malice, did not "clearly" leave that issue to the jury. The court's comment was sufficiently authoritative that, if it did not partially direct a verdict as a legal matter, it at least, as a practical matter, shifted the burden of persuasion on an element of the crime from the government to appellant. This violated due process. *Sandstrom v. Montana,* 442

---

**2.** For conviction of the misdemeanor of malicious destruction of property, the jury must find that (1) the defendant injured, broke, or destroyed, or attempted to injure, break, or destroy property (2) which did not belong to the defendant and (3) had some value, and that (4) the defendant acted maliciously (that is, with an intent to injure, break, or destroy for a bad or evil purpose, not merely negligently or accidentally). D.C.Code § 22–403 (1981); *Nichols v. United States,* 343 A.2d 336, 341 (D.C.1975). This crime can be charged as a felony if the value of the affected property is $200 or more. D.C.Code § 22–403 (1981).

U.S. 510, 99 S.Ct. 2450, 61 L.Ed.2d 39 (1979).

In *Sandstrom*, the Supreme Court held that where intent is an element of the crime, a jury instruction that "the law presumes that a person intends the ordinary consequences of his voluntary acts" violates the requirement of the fourteenth amendment that all elements of an offense be proved beyond a reasonable doubt. 442 U.S. at 512, 99 S.Ct. at 2453. The trial court's comments in the present case are analogous to the burden shifting instruction in *Sandstrom*. Although combined with an instruction that the jurors were "the sole and exclusive judges of the facts," the trial court's comments that "there is no evidence to show that the window was broken without malice" and that "the only genuine dispute in the case is the one of identity" left the unmistakable impression that, if malice were not to be taken as a given, appellant had the responsibility, somehow, to disprove it. We cannot say that the trial court dispelled this impression with the standard instruction that "the burden is on the government to prove the defendant guilty beyond a reasonable doubt, and that burden never shifts through the trial."

We are aware of two cases where the courts apparently have perceived only two legal possibilities in similar circumstances: a partially directed verdict requiring reversal or a fair comment on the evidence permitting affirmance. In *State v. Theriault*, 182 Conn. 366, 438 A.2d 432 (1980), cited by appellant, the Supreme Court of Connecticut ruled the trial court had partially directed a verdict, and thus committed reversible error, in telling the jury "there is no question ... raised concerning the defendant's mental state so you can treat him as having the mental state required for the commission of the crime if you find that he is the actual one who did it." *Id.* at 376, 438 A.2d at 437. The court's general instructions on the state's burden to prove

criminal intent were held insufficient to cure the error. In contrast, in *United States v. Natale*, 526 F.2d 1160, 1167 (2d Cir.1975), *cert. denied*, 425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976), the court held the trial judge's comment that he did not "think" there was an evidentiary dispute about the first two elements of the offense "fell far short" of a partially directed verdict, especially because the judge had instructed the jurors that they were the "sole judges of facts" and were "not bound by his opinions." Moreover, the defense had not contested the first two elements charged.

Obviously, cases such as *Theriault* and *Natale* come close to the line between fair comment on the evidence and a partially directed verdict. Others, such as *Minor* and *Gollin*, are more clear cut. When a court has to choose between these two possibilities, it has to choose between extreme consequences, for a partially directed verdict is reversible error *per se*, *see Minor*, 475 A.2d at 416, whereas fair comment on the evidence is, of course, no error at all.

In the case before us, we conclude that the trial court's comments fell into a middle area tantamount to a burden shifting instruction violating *Sandstrom*. We therefore turn to the question of harmless error.

### III.

■ The Supreme Court recently made it clear in *Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), that burden shifting instructional errors, as in *Sandstrom*, are subject to the harmless error analysis of *Chapman v. California*, 386 U.S. 18, 22–24, 87 S.Ct. 824, 827–828, 17 L.Ed.2d 705 (1967). That is to say, we will uphold the conviction only if it is clear "on the whole record ... the error ... [is] harmless beyond a reasonable doubt." *Rose*, 106 S.Ct. at 3109 (quoting *United States v. Hasting*, 461 U.S. 499, 510, 103 S.Ct. 1974, 76 L.Ed.2d 96 (1983)).[3]

3.  We note that *Rose v. Clark*, — U.S. —, 106 S.Ct. 3101, 92 L.Ed.2d 460 (1986), does not eclipse that part of our decision in *Minor v. United States*, 475 A.2d 414, 416 (D.C.1984),

where we stated that, when the trial court effectively directs a partial verdict in favor of the government, we will automatically reverse. In *Rose*, the Supreme Court explicitly recognized

In *Rose*, the Supreme Court noted that the harmless error analysis does not necessarily turn on whether appellant contested the issue at trial. 106 S.Ct. at 3109; *accord, Herd v. Kincheloe*, 800 F.2d 1526, 1528 (9th Cir.1986) (defendant's failure to contest issue is not dispositive of harmlessness). On the other hand, while not dispositive, the failure to contest an issue is relevant; "because [malice] was not in issue, the defense raised must be considered to determine if the alleged error was harmless." *Beck v. Norris*, 801 F.2d 242, 246 (6th Cir.1986).

■ While it is true, in the abstract, that a juror could have been confused about whether he or she had the right to find no malice, it is virtually inconceivable on the facts of this case that the jury could have found that appellant threw a piece of cinder block through the window but did so negligently, without malicious intent. At trial, appellant did not contest the malice element of the offense. His sole defense consisted of the claim that he was not the individual who destroyed the window. Indeed, in closing argument appellant's counsel explicitly conceded that the only "real dispute" was whether appellant was the one who broke the window: "The glass was broken and that's not in dispute. Everyone agrees that the window was broken. The dispute in this case, the only real dispute, I would suggest, is whether the government has met its burden of proving beyond a reasonable doubt that Mr. Henderson is the one who broke it." Appellant's counsel went on to emphasize that if the jury had a reasonable belief that the woman who was with appellant or some other person had in fact broken the window, it had an obligation to acquit appellant. Counsel did not argue that the window may have been broken accidentally.

Although no witness actually observed appellant break the window, Chiu Wong did testify that he had heard a crash and had found a portion of a cinder block that apparently had been used to break it. Appellant presented no evidence to rebut the compelling implication that someone—be it appellant or someone else—had deliberately smashed the window. Accordingly, for the jury to conclude that the window had been broken accidentally, *i.e.*, without the required malice, it would have had to act irrationally by disregarding the only evidence before it. We simply cannot premise reversal on the possibility that, but for trial court error, the jury may have acted irrationally and acquitted. *Scarborough v. United States*, 522 A.2d 869, 874–75 (D.C. 1987) (en banc). In sum, the trial court's instructional error in weighing the evidence of malice for the jury was harmless beyond a reasonable doubt and thus cannot serve as a basis for reversal.

## IV.

Appellant also contends the trial court erred in denying his motion to suppress Wong's photographic identification. (He does not separately contest Wong's in-court identification.) Appellant asserts that the court misapplied the legal test governing identifications and that the array was so unnecessarily suggestive as to lead to irreparable misidentification. We have indicated on several occasions that a challenge to a photo identification procedure invokes a two-part inquiry:

(1) Was the identification procedure "unnecessarily suggestive and conducive to irreparable misidentification"?;

(2) If so, given the "totality of the circumstances," was the resulting identification reliable nonetheless?

*Stewart v. United States*, 490 A.2d 619, 622 (D.C.1985) (quoting *Patterson v. United States*, 384 A.2d 663, 665 (D.C.1978)); *see also Paris v. United States*, 515 A.2d 199, 207 (D.C.1986).

that harmless error analysis is inappropriate "if a court directed a verdict for the prosecution in a criminal trial by jury … 'regardless of how overwhelmingly the evidence may point in that direction.'" 106 S.Ct. at 3106 (quoting *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355–56, 51 L.Ed.2d 642

(1977)). Until the Supreme Court clearly rules otherwise, we believe that automatic reversal remains the correct remedy when the court has directed a partial verdict, because to that extent the "wrong entity [has] judged the defendant guilty." *Rose*, 106 S.Ct. at 3106.

## A.

Although the court found the photo array was not unduly suggestive, it did note that there was some "suggestivity" inherent in the array and that "the police officer could have collected better photographs to constitute the full array." Moreover, Officer Cartledge, who had shown Wong the array, acknowledged that appellant's photograph was significantly different from the other photographs. On cross examination, Cartledge agreed that appellant had substantially lighter skin than the men in all the other photographs and that, while all the others had hair on the tops of their heads, appellant was virtually bald.

■ The court, however, found the array was not unduly suggestive because it was "gotten from a license tag identification ... [and] not keyed to any description afforded by the complaining witness.... [I]t was not a targeted, police-directed effort to elicit a specific identification.... [T]he situation would have been otherwise if the witness said there was a light-skinned black person with bald hair." We disagree. The trial court failed to recognize that a photo array can be unnecessarily suggestive even if it was not keyed to a particular description given by the witness. We also note that, while it is true Wong did not provide the police with a detailed description of appellant, Wong did give the police a license plate number which the police traced to appellant. Accordingly, the police had some reason to believe that Wong would choose appellant's photograph.

■ The correct focus for the analysis is whether something "in the [photo] array would have directed [the] witness' attention to any particular individual." *McClain v. United States*, 460 A.2d 562, 566 (D.C. 1983). We have viewed this particular array and conclude it was " 'unnecessarily suggestive and conducive to irreparable misidentification.' " *Stewart*, 490 A.2d at 622 (quoting *Patterson*, 384 A.2d at 665). The trial court's finding to the contrary is based on an incorrect premise and is not supported by the evidence. *See id.* at 623 (appellate court is bound by trial court's findings if they are supported by the evidence and in accordance with the law). The photo array in this case speaks for itself. Appellant's photograph stands out dramatically for several reasons. First, the quality of the photographic print is quite poor. Appellant's face has a light, almost completely washed out appearance. All the other photographs represent proper exposures of medium or dark complected black men. Second, aside from small mustaches on some of the men, appellant is the only individual with facial hair—a full beard. Third, appellant is shown as substantially bald, while all the other men exhibit normal hairlines (although several of them have their hair cut close to the scalp). Finally, the date shown on appellant's mug shot is 1984, while all the others date from the early to mid 1960s except for one dated 1979.

Perhaps none of these factors alone would render the array "unnecessarily suggestive." *See, e.g., McClain*, 460 A.2d at 566 (discussion of facial hair and complexion); *Johnson v. United States*, 470 A.2d 756, 759 (D.C.1983) ("Where 'an important identifying characteristic' is not involved, the presence of a distinguishing feature [facial hair] on the selected photograph does not necessarily render a photo array unduly suggestive."). Taken together, however, these factors convince us that this array was unnecessarily suggestive and "conducive to irreparable misidentification." *Stewart*, 490 A.2d at 622 (quoting *Patterson*, 384 A.2d at 665).

## B.

■ We turn now to the second part of the inquiry: notwithstanding the suggestivity of the photo array, "given the 'totality of the circumstances,' was the resulting identification reliable nonetheless?" *Id.* (quoting *Patterson*, 384 A.2d at 665). In determining whether an identification is reliable, the trial court must consider several factors, including:

(1) the opportunity of the witness to view the criminal during the crime, (2) the witness' degree of attention, (3) the accuracy of his prior description of the criminal, (4) the level of certainty demon-

strated at the confrontation, and (5) the time between the crime and the confrontation.

*Id.* at 623 (quoting *Taylor v. United States,* 451 A.2d 859, 863 (D.C.1982), and *Patterson,* 384 A.2d at 666 n. 4).

Appellant asserts, and the government agrees, that the trial court did not inquire into the reliability of Wong's photographic identification. The court noted only that the "identification was not the product of governmental impropriety within the sense of Neil against Biggers." *See Neil v. Biggers,* 409 U.S. 188, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972). This statement cannot be construed as an evaluation of reliability, and, in any event, the court failed to address the five factors—a prerequisite to finding reliability when there is an unduly suggestive identification.

This case exemplifies why we have encouraged trial courts to conduct both steps of the inquiry into a challenged photo identification procedure. *Johnson,* 470 A.2d at 759 n. 1; *United States v. Brannon,* 404 A.2d 926, 931, 932 n. 2 (D.C.1979) (Ferren, J., concurring); *Patterson,* 384 A.2d at 668 n. 7. This court is not in a position to rule on reliability, not having heard the testimony and observed the witnesses. *See Banton v. United States,* 411 A.2d 975, 979 (D.C.1980) (trial court has greater opportunity than appellate court "to assess the demeanor, reliability and credibility" of witness). Accordingly, we must remand the case for the trial court to conduct the necessary inquiry, apply the proper factors, and make a reliability finding, in order to determine the admissibility of the photographic identification. If the court concludes that this identification was reliable despite the suggestive photo array used by the police, appellant's conviction shall stand (subject to the right of appeal on this issue). If, however, the trial court concludes that Wong's photographic identification was not reliable and therefore must be suppressed, the court shall evaluate whether the error was harmless in light of the fact that appellant has not challenged, either at trial or on appeal, Wong's in-court identification. If it was harmless, the conviction shall stand (subject to a right of appeal as to harmless error); if it was not harmless, the court shall order a new trial.

*Remanded.*