**Cappie HELM, Appellant,**

v.

**UNITED STATES, Appellee.**

No. 87–845.

District of Columbia Court of Appeals.

Argued Dec. 7, 1988.
Decided March 17, 1989.

W. Scott Funger, Washington, D.C., appointed by the court, for appellant.

Thomas J. Tourish, Jr., Asst. U.S. Atty., with whom Jay B. Stephens, U.S. Atty., Michael W. Farrell, Elizabeth Trosman, and James R. Costello, Jr., Asst. U.S. Attys., Washington, D.C., were on the brief, for appellee.

Before NEWMAN, BELSON and SCHWELB, Associate Judges.

SCHWELB, Associate Judge:

Cappie Helm appeals from his conviction of possession of heroin with intent to distribute it, in violation of D.C. Code § 33–541(a) (1988). His principal contention is that the trial judge committed prejudicial error by instructing the jurors, in response to an inquiry which they sent to him during their deliberations, that the chemical analysis by the Drug Enforcement Administration (DEA) of the drugs in question "is not open to challenge" and that the jurors were required to accept that analysis as accurate. The government acknowledges that the judge's response was, at least in part, erroneous but argues that harmless error analysis is applicable, and that if the judge's response is viewed in its proper context, the error was in fact harmless. We agree with the government's analysis, and accordingly affirm Helm's conviction.

I

The prosecution introduced evidence tending to show that on December 1, 1986,

Helm sold one packet of heroin to his codefendant, Mills, and placed a cluster of white objects which turned out to be eight other packets of heroin on a nearby mailbox. All of the drugs were recovered and both Helm and Mills were arrested. Mills entered a plea of guilty to possession of heroin, § 33–541(d), and eventually testified as a defense witness, claiming that Helm was not the man who sold him the drugs. Helm was indicted for distribution of heroin in connection with the packet allegedly sold to Mills, and with possession of the other eight packets with intent to distribute the drug (PWID).

At Helm's trial, the government introduced separate DEA analyses of the one packet allegedly sold to Mills and the eight packets which were the subject of the PWID charge. According to the DEA, heroin constituted 5.4% of the material in the one packet and 5% of the material in the other eight packets. During the course of the trial, Helm declined to enter into any stipulations, but never challenged the government's evidence that the white powder which was received in evidence was in fact heroin. A question did arise during the trial, however, as to whether the packet sold to Mills came from the same batch as the eight packets that formed the basis for the PWID charge.

During his closing instructions, the trial judge correctly explained to the jury, in detailing the elements of PWID, that

you must ascertain whether or not those eight packs of white powder that are contained in that other glassine envelope ... whether the government has proved to you beyond a reasonable doubt that the substance is heroin.[1]

After the jurors had begun to deliberate, they sent the judge a note with two questions:

1. Judge, is it possible for a seller to have heroin at different strengths at the same time?

2. How accurate is the test for heroin?

Helm's attorney vigorously objected to the judge's answering either of these questions substantively. He argued, among other things, that the judge may not take judicial notice of facts not in evidence, and that the answers to the jury's questions would require expert testimony which could not be given after the prosecution had closed its case.

The judge obviously interpreted the jury's question about the accuracy of the test for heroin as addressing the percentage of heroin in each sample, rather than as reflecting a concern whether or not the white powder was heroin at all. As he told the attorneys outside the presence of the jury,

[t]he DEA analysis said the percentage of heroin in the eight envelopes was five percent ... and the single one was five point six percent. Obviously that is what the jury had in mind.

Responding to the note from that mindset after the jurors returned to the courtroom, the judge told them, in pertinent part:

If you are referring to the two exhibits, exhibit 4 and exhibit 5, which contains the Drug Enforcement Administration analysis done in connection with this case, the answer to that is that that exhibit is received in evidence. It is not open to challenge. It is not open to challenge. You shall accept exhibit 4 and exhibit 5 and the analysis of the drug heroin contained therein, you shall accept those two exhibits as accurate. That is not open to challenge.

After briefly addressing the jury's question about whether a seller could have different brands of heroin,[2] the judge returned to the subject at hand:

---

1. The judge gave a substantially identical instruction with respect to the one package which was the subject of the distribution charge.

2. After reminding the jurors that their recollection of Mills' testimony controlled, the judge recalled Mills' description of several "barkers"

advertising various brands of heroin, and continued as follows:

So is it possible then for some seller to have more than one brand out there on the street at the same time? The answer to that obviously is yes, if you listen to Mr. Mills. If they were hawking several brands one man might have been selling two or three different kinds

I have to say to you in connection with this case, if what you are talking about now when you ask me this question, the DEA analysis refers to five percent heroin on one and five point something percent on the other. *If that is what you are talking about, I have told you that that analysis is not open to challenge. You shall accept that as undisputed evidence in this case.* Now in connection with that analysis, the question you have to decide is has the government proved beyond a reasonable doubt that this defendant had that single capsule that was sold to Mr. Mills, and then has the government proved beyond a reasonable doubt that he also had the other eight packets that were allegedly found on the mailbox.

(Emphasis added.)

The jury was excused for the day, and defense counsel requested a mistrial. At that juncture, he augmented his prior grounds for objection and argued that the judge "might have reinforced that part of the government's case which we feel is the weakest, that is, the chain of custody." Counsel did not then contend that the judge had in effect directed a verdict on an element of the offense, nor did it apparently occur to anyone that this is what the judge might have done. The judge denied the motion for a mistrial. The following day, the jury acquitted Helm of distribution but convicted him of PWID. This appeal followed.

## II

█ We agree with Helm that the trial judge was in error when he told the jury that the DEA analysis "is not open to challenge" and that "you shall accept those two exhibits as accurate." First, although the analysis was admissible in evidence [3] and, in this case, undisputed, this did not *require* the jury to accept it, even though a verdict inconsistent with the analysis would

not have been a reasonable one. *See Minor v. United States*, 475 A.2d 414, 416 (D.C.1984). Second, although the trial judge obviously intended his instruction to refer to the DEA's conclusion about the percentage of heroin in each sample, the response as given could be construed literally as also referring to a question which nobody asked, namely whether the white powder was heroin at all. The trial judge had instructed the jurors lucidly and correctly on the previous day, and there is nothing to indicate that he intended his remarks to come out in the way they did or to second-guess his previous instructions. Nevertheless, the government for all practical purposes acknowledged at oral argument that error was committed, and we agree. The question is whether harmless error analysis applies and, if so, whether the error was harmless.

No matter how strong the prosecution evidence may be, harmless error analysis "presumably" does not apply if a court directs a verdict for the prosecution in a jury trial. *Rose v. Clark*, 478 U.S. 570, 578, 106 S.Ct. 3101, 3106, 92 L.Ed.2d 460 (1986); *United States v. Martin Linen Supply Co.*, 430 U.S. 564, 572–73, 97 S.Ct. 1349, 1355–56, 51 L.Ed.2d 642 (1977). As the Supreme Court explained in *Morissette v. United States*, 342 U.S. 246, 274, 72 S.Ct. 240, 255, 96 L.Ed. 288 (1952) (quoting from *People v. Flack*, 125 N.Y. 324, 334, 26 N.E. 267, 270 (1890) (per Andrews, J.)),

> Jurors may be perverse; the ends of justice may be defeated by unrighteous verdicts, but so long as the functions of the judge and jury are distinct, the one responding to the law, the other to the facts, neither can invade the province of the other without destroying the significance of trial by court and jury....

*Accord, Minor, supra*, 475 A.2d at 416.

This court has also held, consistently with the teachings of *Morissette* and *Rose*, that harmless error analysis does not apply

---

of brands. But that is something that you have to decide.

The government acknowledges that this response was inappropriate and inaccurately characterized Mills' testimony, but argues—incontrovertibly in our view—that Helm's acquittal on

the distribution charge eliminated any possibility of prejudice.

**3.** *See* D.C.Code 33–556 (1988); *Howard v. United States*, 473 A.2d 835, 839 (D.C.1984).

where the trial judge unambiguously directs a verdict as to one element of the offense. In *Minor, supra,* a felony prosecution for malicious destruction of property, the trial judge told the jury that he found, "as a matter of law," that the value of the property was in excess of $100. This court reversed Minor's conviction, holding that it was error for the judge to deprive a defendant of a jury determination concerning an essential element of the crime charged, and that the error was intrinsically prejudicial and required automatic reversal. This principle was reiterated in *Henderson v. United States,* 527 A.2d 1262 (D.C.1987).[4]

Neither *Minor* nor *Henderson,* however, requires reversal here. In *Minor,* this court expressly articulated the limits of its holding by reference to the "unambiguous" direction of a partial verdict in favor of the prosecution. 475 A.2d at 416. In *Henderson,* this court affirmed a conviction for malicious destruction of property, holding that a partial verdict had not been unambiguously directed, and that harmless error analysis applied, where the trial judge had told the jury that "there is no evidence to show that the window was broken without malice" and that "the only genuine dispute in the case is the one of identity."[5] 527 A.2d at 1265-67.

▋ The question in the present case, in light of *Minor* and *Henderson,* is whether the trial judge unambiguously directed a verdict on an element of the offense. If one examines his words in a pristine vacuum, without regard to what came before, one might reasonably reach the conclusion that he did. If the judge's remarks are placed in the context in which they were made, however,[6] we perceive no unambiguous direction of a verdict. Rather, it becomes apparent from the sequence of events that both the jurors and the judge were addressing themselves to the difference in the chemical composition between the one packet (5.4% heroin) and the eight packets (5% heroin), and not to the non-issue whether the white powder was heroin at all. Indeed, the judge specifically stated during the latter portion of his response that he assumed that this comparison was what concerned the jury. Although his phrasing was undoubtedly imprecise, we think it unreasonable to conclude that the judge was overruling his prior instruction that the government must prove that the packets contained heroin, or that the jury understood him to be doing so.

It is revealing that none of the participants in the trial construed the judge's remarks as the partial direction of a verdict. The defense attorney, who represented his client with commendable persistence and diligence, never raised this as an issue at the time.[7] Neither the prosecutor nor the judge made any comment during the fairly protracted debate surrounding the jury note which would suggest any perception by either man that the judge's response bore on the issue whether the pow-

---

**4.** This court stated in *Henderson* that

[u]ntil the Supreme Court clearly rules otherwise, we believe that automatic reversal remains the correct remedy when the court has directed a partial verdict, because to that extent the wrong entity has judged the defendant guilty.

527 A.2d at 1267 n. 3.

**5.** During closing argument, the defense attorney in *Henderson* had also characterized as "the only real dispute" in the case as being whether the defendant had been identified beyond a reasonable doubt as the perpetrator. *Id.* at 1267.

**6.** "The propriety of the trial court's instructions must be determined from the whole of the charge, rather than through the scrutiny of isolated sentences or passages." *Hall v. United States,* 383 A.2d 1086, 1089 n. 8 (D.C.1978).

Although this principle has more force when one is discussing separate passages in one continuous charge, we think it has some relevance here.

**7.** After the judge had responded to the jury note, he offered during further discussion to make any clarifying reinstruction if the defense could show prejudice. Defense counsel made no request at that time, or at any other time, that the judge reaffirm his prior instruction that the government must prove that the powder was heroin. Even on appeal, Helm's attorney, who was also his trial counsel, devoted only two sentences on page 29 of a 47-page brief to the argument that "the trial judge, in effect, partially directed a verdict in favor of the government." The point was not included in any of the five headings or sub-headings of counsel's argument.

der was heroin. For their part, the jurors, after posing two related questions which were both obviously directed to the significance, if any, of the difference between the percentages of heroin in the two samples, rendered a verdict which at least suggests that they doubted that a defendant who possessed eight packets of 5% heroin sold a packet with 5.4% of the drug. An appellate court only has access to a cold printed record, but we think it is fair to say that if the judge's remarks had come across in the courtroom as partial direction of a verdict in the government's favor, someone would probably have remarked on so extraordinary an event.

Under these circumstances, we decline to extend *Minor* and similar authorities[8] to reach facts such as those presented here. There was, at least, no unambiguous partial direction of a verdict on any element of the offense. *Minor, supra,* 475 A.2d at 416. Moreover, despite their literal meaning, we do not think the judge's words can reasonably be construed in context as constituting such a partial direction.

We discern no basis whatever for concluding that, but for the trial judge's response, the jury might have acquitted Helm on the theory that the white powder had not been proved to be heroin, so that the error was undoubtedly harmless in fact. We should reverse here only if a judge's misstatement such as the one under discussion compels such a result by the force of the law's own internal dynamics, without regard to any probable or even possible impact on the trial. We conclude that we need not reverse, for we do not believe that the law is or should be so preoccupied with theory that practical consequences must be disregarded.

There being no appreciable possibility that the trial judge's misstatement contributed to Helm's conviction, it would be a waste of time and resources, and might imperil justice,[9] to try him all over again. Although the issue might be viewed as a close one from a purely academic perspective, based on literal reading rather than careful analysis of context, we discern no reason to eschew the result which is surely dictated by common sense if the events here in question are evaluated in terms of their potential impact on the trial. Accordingly, Helm's conviction should be and it is hereby affirmed.[10]

*So ordered.*

---

8. *See, e.g., United States v. Gollin,* 166 F.2d 123 (3d Cir.1947), *cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948), reversing a conviction for theft from interstate commerce where the trial judge instructed the jury, "as a matter of law, and not a matter for the jury to determine," that the truck from which property was allegedly stolen was moving in interstate commerce. *Id.* at 125.

9. It is not always so easy for the government to reassemble its witnesses and evidence for a return match, or for the witnesses to remember what happened many years ago.

10. We have also considered Helm's contention that he was denied his confrontation rights and other rights as a result of the failure of the government to call as a witness one of the officers involved in his arrest, and find it to be without merit. Helm could have called the officer himself, and could have asked the judge to redact the officer's summary of the transaction from the DEA report. He did neither, and there was no prejudice in any event.