Robert J. CURTIS, Appellant,

v.

UNITED STATES, Appellee.

No. 04–CF–905.

District of Columbia Court of Appeals.

Submitted Sept. 29, 2005.
Decided Nov. 3, 2005.

Deborah A. Persico was on the brief for appellant.

Kenneth L. Wainstein, United States Attorney, John R. Fisher, Assistant United States attorney at the time the brief was filed, and Thomas J. Tourish, Jr., Luis A. Lopez, and Melissa M. Nasrah, Assistant United States Attorneys, were on the brief for appellee.

Before RUIZ and KRAMER, Associate Judges, and KING, Senior Judge.

KRAMER, Associate Judge:

This appeal arises from an incident that began, as the government's evidence at trial showed, when thirty-two year-old Jesse Rowe, a patent examiner with an engineering degree, took his roommate's sixteen year-old brother, Richard Sayoc, to a Kentucy Fried Chicken ("KFC") to pick up dinner. While inside of the KFC, Rowe rejected the demand of a stranger on a bicycle (referred to at trial as the "small man") to give him fifty cents. Shortly thereafter, still inside the KFC, the small man came up and threatened Rowe with a knife, described by Rowe as a folding knife with a silver, four-inch blade. The man complained, "You didn't have to say 'no,'" then folded up the knife. Thereafter, Rowe saw the small man walk over to a bigger man, identified by Rowe as the appellant, and saw the small man hand the knife to the appellant. These events were captured on a KFC surveillance tape which corroborated Rowe's testimony.

After obtaining their food, Rowe and Richard Sayoc left the KFC. Within a short distance of the restaurant, the appellant and the small man confronted them on the street. The small man complained of being "disrespected," and asked why Rowe had refused to give him money. The small man then hit Rowe from behind, and the appellant pulled out a knife that Rowe testified was the same knife the small man had pointed at him inside the KFC. The appellant pointed the knife at Rowe and demanded his money. After Rowe turned over a $10 bill, the appellant put the knife away, but instructed the small man to check Rowe's pockets. In doing so, the small man found one more dollar, which enraged the appellant and led him to punch Rowe twice in the jaw. In the meantime, Richard Sayoc ran home for help, and Rowe told bystanders to call 911. At that point, the appellant left the scene.

When the police arrived and took a report, Rowe was able to describe both attackers in detail. Three days later, the detectives assigned to the case obtained the KFC surveillance tape showing the inside of the KFC on the day of the offenses and showed it to Rowe. Rowe was able to point out both the appellant and the small man on the tape.

The detectives also obtained a surveillance tape that captured the area outside of the KFC shortly before the events at issue. On this tape, which was not shown to Rowe as part of the investigation, the appellant can be seen coming to the KFC from a house nearby. The detectives went to the house, located the appellant and obtained his identification. Two weeks after Rowe had viewed the tape showing the events inside of the KFC, the detectives showed Rowe an eight-person photo array that included a photograph of the appellant, and Rowe selected the appellant's photo from the array. Thereafter, the appellant was arrested and indicted on two charges—Armed Robbery (Knife) and Carrying a Dangerous Weapon (Knife).

At trial, both Rowe and Richard Sayoc pointed out the appellant and the small man on the surveillance tape as the two men involved in the robbery. Rowe also made an in-court identification. One of the detectives additionally testified that Rowe had pointed out the two men on the KFC surveillance tape three days after the robbery and had selected the appellant from the photo spread two weeks later.

The appellant's defense was that he had neither robbed Rowe nor had a knife, but had merely punched Rowe outside of the KFC because Rowe had mistakenly attempted to take the appellant's bag of food at the KFC pick-up counter. The appellant explained that, what might otherwise appear to be an overreaction to a fellow customer mistakenly attempting to take

one's bag of food, had been caused by the fact that he had just gotten up from a three-hour nap, presumably meaning that he was not in a congenial mood. The appellant also complained that Rowe had dared to argue briefly with him about whether or not the food was in fact his or Rowe's.[1] Rowe himself had no recollection of a mix-up about the food. The jury convicted the appellant on both counts.

■ On appeal, the appellant argues that his convictions should be overturned because the trial court erred in admitting the KFC surveillance tape and photo array identifications of him made by Rowe. The appellant's position is that the identification procedures were unduly suggestive and the identifications were therefore unreliable. We find these arguments to be without merit.

■ The law is clear. If an identification procedure is "unnecessarily suggestive and conducive to irreparable mistaken identification," it should be suppressed. *Neil v. Biggers,* 409 U.S. 188, 195, 93 S.Ct. 375, 34 L.Ed.2d 401 (1972) (citing *Stovall v. Denno,* 388 U.S. 293, 301–02, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967)); *see also Henderson v. United States,* 527 A.2d 1262, 1267 (D.C.1987). Even where undue suggestivity is found, an identification is admissible if, given the "totality of the circumstances," the resulting identification was nonetheless reliable. *See Redmond v. United States,* 829 A.2d 229, 233 (D.C. 2003) (citing *Manson v. Brathwaite,* 432 U.S. 98, 97 S.Ct. 2243, 53 L.Ed.2d 140 (1977)); *Henderson, supra,* 527 A.2d at 1267; *Patterson v. United States,* 384 A.2d 663 (D.C.1978). Because we find that there was no undue suggestivity in the procedures utilized by the detectives, we affirm.

Here, the appellant argues that it was "unduly suggestive and conducive to the irreparable misidentification of appellant" for the detectives to show Rowe the surveillance tape with him "inside the KFC next to appellant," and, thereafter, to show him a "photo array of the person Rowe had already seen on the video." For the following reasons, we find this argument to be without merit.

First, the appellant bases the argument on the erroneous factual premise that Rowe had given only the most general description of the robber before seeing the tape. As the government points out, however, that is simply not the case. Rather, on the night of the offense, Rowe gave a full description of both the appellant and the small man to the police who responded to the 911 call. Moreover, the appellant does not claim that any part of that description was wrong. Thus, his argument that by viewing the tape *before* viewing the photo array, Rowe was *"compelled"* to identify the person who robbed him on the street has no factual basis.

Second, the appellant posits:

[The detectives] could have removed all suggestivity from this procedure by viewing the videotape privately, then putting together a photo array to include appellant's photo because he was one of the persons inside the KFC and Rowe had described the robber as a black male about six feet tall. Had Rowe identified appellant from the photo array without ever having seen him on the videotape, appellant submits, the

---

1. While the appellant testified that complainant Rowe had attempted unsuccessfully to take the appellant's food, the court notes that the defense's other witness, Ernest Whitehead, testified firmly that while he was with the appellant in the KFC, Rowe actually took the appellant's food and left the restaurant with it—thus contradicting part of the appellant's account of the events.

identification would not have been suggestive.

We reject the argument that in order to avoid suppression of a photo identification on the ground of undue suggestivity, detectives would have to speculate about who was the actual suspect on a surveillance tape showing numerous customers in a restaurant. Indeed, unless there is reason to believe that it is not accurate, the tape itself is the best available evidence of what happened. We conclude that so long as detectives do not suggest to an eyewitness which person shown on the tape committed the offense, but rather, as here, elicit the information from the witness, there is no suggestivity. We note that the appellant points to no procedure utilized by the police during Rowe's viewing of the KFC tape that could be considered unduly suggestive. Indeed, it was Rowe, not the police, who had the ability to explain what was happening on the tape. The police would indeed be cramped in their ability to solve crimes if they were unable, as part of their investigation, to show victims an actual tape of the offense for fear that this would lead to suppression of any subsequent identifications.

With respect to the photo array itself, the appellant does not argue that it was an unfairly suggestive array. Indeed, at the conclusion of the motions hearing, the trial judge made careful and extensive findings to the contrary, which this court could not find clearly erroneous. *See Holt v. United States,* 675 A.2d 474, 482 (D.C.1996). Thus, neither the showing of the videotape before the showing of the photo spread, nor the composition of the photo array itself fell outside of constitutional standards. Consequently, there is no basis for concluding that either the photo array identification or the in-court identification should have been suppressed.

 Finally, the appellant's claim that Rowe's identifications of the appellant were unreliable is refuted by the record. Rowe had ample opportunity to observe the appellant. His companion, Richard Sayoc, who also testified at trial, corroborated the identification, as did the videotape itself. In his trial testimony, the appellant himself admitted that he punched Rowe outside on the street near the KFC, thus effectively conceding that Rowe's identification of him was accurate.

Thus, for the reasons set forth herein, the convictions are AFFIRMED.