Edward Cheeseman ROBERTS,
Appellant,

v.

UNITED STATES, Appellee.

No. 96–CF–1092.

District of Columbia Court of Appeals.

June 1, 2000.

Jaclyn S. Frankfurt, Public Defender Service, with whom James Klein, Public Defender Service, was on the brief, for appellant.

Stephen J. Gripkey, Assistant United States Attorney, with whom Wilma A. Lewis, United States Attorney, and John R. Fisher and Rachel Adelman–Pierson, Assistant United States Attorneys, were on the brief, for appellee.

Before WAGNER, Chief Judge, and TERRY, STEADMAN, SCHWELB, FARRELL, RUIZ,* REID, GLICKMAN, and WASHINGTON, Associate Judges.

Before STEADMAN, SCHWELB, and RUIZ, Associate Judges.

## ORDER

PER CURIAM:

In consideration of the opinion by the court in *Roberts v. United States*, 743 A.2d 212 (D.C.1999) (*Roberts I*), the appellant's petition for rehearing or rehearing en

banc, the appellee's opposition to the petition, and the record herein, it is now hereby

ORDERED by the merits division that the petition for rehearing is granted in part and that the opinion in *Roberts I* is modified as reflected in the division opinion on rehearing issued this date (*Roberts II*); and the petition for rehearing, in all other respects, is denied. It is

FURTHER ORDERED that the petition for rehearing en banc is denied, without prejudice to the filing of a new petition addressed to the division's decision on rehearing.

## ON PETITION FOR REHEARING

SCHWELB, Associate Judge:

Edward Cheeseman Roberts was convicted by a jury of one count of carnal knowledge of a child under sixteen years of age and one count of rape, both in violation of D.C.Code § 22–2801 (repealed 1995).[1] On appeal, Roberts contends that the indictment on which he was brought to trial was unconstitutionally vague and that the prosecution's evidence constructively amended the allegedly defective indictment. Roberts also claims that the trial judge committed plain error by failing, *sua sponte*, to preclude the prosecutor from cross-examining Roberts on the subject of Roberts' failure, prior to trial, to apprise either the police or his family or friends of his claim that his sexual relations with the complaining witness were consensual. We affirm Roberts' convictions for carnal knowledge and rape.

### I.

**THE TRIAL COURT PROCEEDINGS**[2]

The complaining witness in this case, K.L.W., is Roberts' cousin. In 1990, when

---

* Associate Judge Ruiz has issued a separate concurring opinion.

1. All District of Columbia Code provisions relating to sexual offenses were repealed in 1995. They were supplanted by the Anti-

Sexual Abuse Act of 1994, which is now codified in D.C.Code §§ 22–4101 *et seq.* (1996).

2. The trial at which Roberts was convicted lasted eight days, and extensive testimony was presented. We summarize only those facts

she was a fifteen-year-old high school student, K.L.W. came to live with Roberts and his wife and children. K.L.W. testified that thereafter, for a period of more than two years, Roberts repeatedly molested and raped her. K.L.W. estimated that, in all, she had been abused approximately two dozen times.[3]

In May 1992, K.L.W. became pregnant.[4] Prior to her pregnancy, K.L.W. had been too afraid[5] and ashamed to disclose the abuse that she had endured. Following the discovery of her condition, however, K.L.W. told a schoolmate and her basketball coach what had happened to her. She repeated her account to the police, and Roberts was arrested.

On March 16, 1994, a grand jury returned an indictment which included the following counts:

COUNT ONE: Between on or about March 18, 1990, and on or about March 17, 1991, within the District of Columbia, Edward Cheeseman Roberts carnally [k]new and abused a female child named K.L.W., who was then under sixteen years of age, that is, about 15 years of age. (Carnal Knowledge, in violation of 22 D.C.Code, Section 2801).

*　　*　　*　　*　　*　　*

COUNT THREE: Between on or about March 18, 1991, and on or about October 31, 1992, within the District of Columbia, Edward Cheeseman Roberts [had] carnal knowledge of a female named

K.L.W., forcibly and against her will. (Rape, in violation of 22 D.C.Code, Section 2801).[6]

Following the return of the indictment, Roberts' attorney filed a motion for a bill of particulars. Counsel also asked the court to dismiss the indictment as duplicitous and unconstitutionally vague. She reiterated these criticisms of the indictment on several occasions prior to trial and continued to request its dismissal.

On November 21, 1994, the government responded as follows to the request for a bill of particulars:

1. Counts one and two of the indictment relate to an incident which occurred in the winter of 1990 and 1991 inside 2111 16th Street, S.E., in Washington, D.C.

2. Counts three and four relate to an incident which occurred between, on or about October 19, 1992, inside 2111 16th Street, S.E., in Washington, D.C.

On February 8, 1995, Judge Henry F. Greene denied Roberts' motion to dismiss the indictment. In light of the government's claim that Roberts had committed numerous acts of carnal knowledge and rape, the judge recognized that Roberts was entitled to reasonable notice of the specific acts of which he was being accused and for which he would be tried:

I don't think that the government can just have the jury kind of picking and

and proceedings that we consider relevant to the issues on appeal.

3. There was also evidence that Roberts had molested K.L.W. and her sister when the two girls were very young.

4. On February 9, 1993, K.L.W. gave birth to a baby girl. Roberts acknowledged at trial, and DNA tests independently disclosed, that he was the child's father. Roberts testified, however, that he had sexual relations with K.L.W. only once, that these relations were consensual, and that K.L.W.'s daughter must have been conceived during that single voluntary sexual encounter.

5. K.L.W. also testified that Roberts had physically abused his wife in K.L.W.'s presence, and she feared that he might similarly harm her.

6. The indictment also charged Roberts with sodomy on a minor (Count Two) and sodomy (Count Four). A motion for judgment of acquittal (MJOA) was granted at Roberts' first trial with respect to Count Four.

At the second trial, Roberts was found guilty of taking indecent liberties with a minor, as a lesser included offense of sodomy of a minor. The government acknowledges that the indecent liberties charge is not a lesser included offense of sodomy and that this conviction must be vacated.

choosing to decide ... which offense it wants to plug into the indictment.

The prosecutor responded by referring to the two incidents identified in the government's bill of particulars. She indicated that these incidents were the ones of which K.L.W. had the best recollection.

On February 14, 1995, the case went to trial before Judge Stephanie Duncan–Peters. The parties presented their evidence and made their closing arguments, the judge instructed the jury, and the jurors began their deliberations. The foreman of the jury then advised the court that, according to one of the jurors, another member of the jury "has had discussions about the credibility of a witness in this case with people outside the jury room who know and have opinions about the witness." The judge subsequently declared a mistrial on the basis of juror misconduct.[7]

More than a year later, on March 21, 1996, Roberts' second trial began before Judge Colleen Kollar–Kotelly. As previously noted, Roberts was convicted of carnal knowledge and rape.[8] This appeal followed.

## II.

## LEGAL DISCUSSION

A. *General principles.*

Roberts first contends that the indictment in this case is unduly vague and that it violates his rights under the Fifth and Sixth Amendments. Although the charging document is hardly a model of clarity, and although its shortcomings have been compounded by a singularly infelicitous bill of particulars, we conclude that the indictment passes constitutional muster.

Rule 7 (c) of the Superior Court Rules of Criminal Procedure requires that the indictment shall contain "a plain, concise and definite written statement of the essential facts constituting the crime charged." As the court stated in *United States v. Silverman,* 430 F.2d 106 (2d Cir.1970), *cert. denied,* 402 U.S. 953, 91 S.Ct. 1619, 29 L.Ed.2d 123 (1971), this requirement

> performs three constitutionally required functions. It permits the accused "to be informed of the nature and cause of the accusation" as required by the Sixth Amendment. It prevents any person from being "subject for the same offense to be twice put in jeopardy of life or limb" as required by the Fifth Amendment. Finally, it preserves the protection given by the Fifth Amendment from being "held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury." 8 Moore, Federal Practice ¶ 7.04 at 7–15 (1969).

430 F.2d at 110 (construing the federal counterpart of Super. Ct.Crim. R. 7(c)). In determining whether an indictment satisfies these constitutional standards, the Supreme Court has focused on two criteria, namely,

> first, whether the indictment contains the elements of the offense intended to be charged, and sufficiently apprises the defendant of what he must be prepared to meet, and, secondly, in case any other proceedings are taken against him for a similar offence, whether the record shows with accuracy to what extent he may plead a former acquittal or conviction.

*Russell v. United States,* 369 U.S. 749, 763–64, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962) (quoting *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932)) (internal quotation marks omitted). The indictment must also be sufficiently definite to enable the court to ensure, at trial, that the defendant is being tried only for the acts with which the grand jury has charged him, and not for different conduct.

---

**7.** The record does not disclose whether the defense made a motion for a mistrial. No double jeopardy claim has been asserted on Roberts' behalf.

**8.** See also note 6, *supra.*

"The very purpose of the requirement that a man be indicted by grand jury is to limit his jeopardy to offenses charged by a group of his fellow citizens acting independently of either prosecuting attorney or judge." *Russell, supra,* 369 U.S. at 771, 82 S.Ct. 1038 (quoting *Stirone v. United States,* 361 U.S. 212, 218, 80 S.Ct. 270, 4 L.Ed.2d 252 (1960)). If an indictment satisfies these standards, it is immaterial "whether it could have been made more definite and certain." *Hagner, supra,* 285 U.S. at 431, 52 S.Ct. 417.

Roberts complains that the indictment in this case is too general and vague. Focusing on the time frames set forth in the two counts at issue—one year in Count One, more than nineteen months in Count Three—Roberts complains that the indictment lacks "reasonable particularity as to time and place." *See, e.g., Wong Tai v. United States,* 273 U.S. 77, 81, 47 S.Ct. 300, 71 L.Ed. 545 (1927). According to Roberts, the lack of specificity as to dates permits the prosecution, rather than the grand jury, to select the precise conduct upon which the trial is to be focused. Roberts also contends that, contrary to the teaching of *Russell* and *Stirone,* he has been tried for conduct different from that charged by the grand jury.

Counsel's argument on Roberts' behalf has been cogently presented. We agree that it may be difficult to prepare a defense (and particularly an alibi defense, though Roberts presented none) where the date of the alleged wrongdoing has not been identified. We also agree that the government's bill of particulars lends a measure of plausibility to Roberts' claim that he may have been indicted for crimes different from those of which he was convicted. Nevertheless, Roberts' position does not carry the day.

B. *The meaning of the indictment.*

■ In ascertaining the meaning of the indictment, we must first look to its language. Count One of the indictment (carnal knowledge) states that Roberts "carnally [k]new" K.L.W. "[b]etween on or about March 18, 1990, and on or about March 17, 1991." Count Three of the indictment states that Roberts raped K.L.W. "[b]etween on or about March 18, 1991 and on or about October 31, 1992."

Although the indictment in this case does not use a phrase such as "on divers dates" or "repeatedly,"[9] its language, structure, and context reflect that the grand jury was seeking to accuse Roberts of more than a single act of carnal knowledge during the one-year period covered by Count One and of more than a single act of rape during the even longer time frame embraced by Count Three. The word "repeatedly" does not appear in either count, but it was surely implied by the lengthy periods to which each count refers, especially where the end of the period described in Count One and the beginning of the period reflected in Count Three are both defined by K.L.W.'s sixteenth birthday, rather than by any alleged act of rape or molestation. The most reasonable interpretation of the indictment, in our view, is that each count accuses Roberts of engaging in a series of individual criminal acts between the dates set forth in that count. If that were not what the drafter intended, then the long periods covered by each count, defined by the date of a single incident and K.L.W.'s sixteenth birthday, would make very little sense.

The foregoing common sense construction is supported by the specific context in which the indictment in this case was returned. By the time the grand jury acted, a preliminary hearing had been held, and it was no secret to the prosecutors or to

9. *Cf. State v. Mancinone,* 15 Conn.App. 251, 545 A.2d 1131, 1135–36, *certif. denied,* 209 Conn. 818, 551 A.2d 757 (1988), *cert. denied,* 489 U.S. 1017, 109 S.Ct. 1132, 103 L.Ed.2d 194 (1989); *Commonwealth v. Niemetz,* 282 Pa.Super. 431, 422 A.2d 1369, 1372 (1980), both discussed *infra,* in which such language was explicitly included in the charging documents.

the defense that K.L.W. had accused Roberts of raping and molesting her on a number of occasions, some prior to her sixteenth birthday on March 18, 1991, and some thereafter.[10] Indeed, in this case, we have available to us grand jury testimony which sheds light on this very subject. According to the detective who presented the case to the grand jury, K.L.W. told him that the molestation "was ongoing and continuous. She told me that whenever Mr. Roberts' wife ₒwas not in the house that he would find her wherever she was, whether it was morning, noon or evening, and force her to satisfy him."

Although Roberts now invokes the government's bill of particulars to contest this common sense construction, his argument is undermined by the position he took, persuasively and unequivocally, in the trial court. In her initial motion to dismiss the indictment as duplicitous, filed on November 15, 1994, Roberts' trial attorney argued as follows:

> Logic dictates that each of these counts is not intended to allege that there was a single act of intercourse lasting an entire year. Further, if the government were pursuing only one distinct incident, the date in the indictment would be tailored specifically to that incident, rather than solely to the birthdate of the complainant.

Counsel's reasoning is as persuasive today as it was when the above-quoted passage was written, and the meaning of the indictment has not changed since then.[11]

We recognize that, after the fact, the government treated the indictment as though each count involved only a single incident of carnal knowledge or rape. Read literally, the bill of particulars may support that interpretation, although it could also be construed as specifying the proof to be offered at trial even if each count of the indictment covered a series of acts, rather than a single one. Moreover, the government requested the trial court to allow it to introduce evidence of sexual assaults not specified in the bill of particulars as "other crimes" evidence, see Drew v. United States, 118 U.S.App. D.C. 11, 331 F.2d 85 (1964), thus arguably implying that such offenses were not within the scope of the indictment.[12] Each party has thus taken a position in this court which is less than faithful to the position which that party took in the trial court. Nevertheless, giving the indictment its most reasonable construction, we conclude that the grand jury charged a series of individual acts in each count, and that the government was entitled, at trial, to present evidence of an offense or offenses which were alleged to have been committed during the period specified in that count.[13]

**10.** In her motion to dismiss the indictment, Roberts' trial attorney alleged that "[a]t a preliminary hearing and through discussions with government counsel, it is alleged that there were several incidents which took place during each of the time periods set forth in the indictment."

**11.** During a colloquy before Judge Greene on February 8, 1995, however, Roberts' attorney insisted that the grand jury "charged [Roberts] with one act in each of those counts."

**12.** Based on the prosecutor's contentions in the trial court, Judge Greene stated: "I was under the impression that all of this other evidence was coming in under a Drew or an unusual sexual preference theory."

**13.** In the trial court, Roberts argued that the indictment was duplicitous in that each count

embraced more than one offense. Cf. Super. Ct.Crim. R. 8(a) ("Two or more offenses may be charged in the same indictment ... in a separate count for each offense."). Charging documents similar to the indictment now before us have been sustained by a number of courts, notwithstanding their arguable duplicity. See, e.g., authorities cited in note 10, supra; see also United States v. Shorter, 257 U.S.App. D.C. 358, 360, 809 F.2d 54, 56, cert. denied, 484 U.S. 817, 108 S.Ct. 71, 98 L.Ed.2d 35 (1987), discussed infra at p. [591]. But in any event, duplicity

> is not fatal, and does not require dismissal of the count. The proper remedy is to require the government to elect upon which charge contained in the count it will rely, and defendant is not harmed if the proof is limited to only one of the charges in the duplicitous count. It is held also that the

## C. *Roberts' claim of inadequate notice.*

■ Roberts contends that the period of time covered by each count of the indictment is so protracted that he was denied fair notice of the crime with which he was charged. We do not agree.

■ "Good pleading undoubtedly requires an allegation that the offense was committed on a particular day, month, and year, but it does not necessarily follow that the omission [14] to state a particular day is fatal upon a motion in arrest of judgment." *State v. Mulkey*, 316 Md. 475, 560 A.2d 24, 26 (1989) (quoting *Ledbetter v. United States*, 170 U.S. 606, 612, 18 S.Ct. 774, 42 L.Ed. 1162 (1898)). "The particularity of time, place, circumstances, causes, etc. . . . is not essential to an indictment." *Glasser v. United States*, 315 U.S. 60, 66, 62 S.Ct. 457, 86 L.Ed. 680 (1942). A young victim of rape or sexual molestation often cannot be expected to recall exact dates and times, and this is especially true where, as in this case, the defendant's wrongful conduct allegedly made K.L.W. afraid to report the abuse contemporaneously. *Cf. Farris v. Compton*, 652 A.2d 49, 55 (D.C. 1994). Recognizing these realities, the courts have consistently given prosecutors and grand juries leeway in terms of the particularity required in an indictment in this kind of case. *See, e.g., Jackson v. United States*, 503 A.2d 1225, 1226–27 (D.C.1986); *Mulkey, supra,* 316 Md. 475, 560 A.2d 24, 26–31 (1989) (collecting authorities); *State v. Lakin*, 128 N.H. 639, 517 A.2d 846 (1986); *Mancinone, supra,* 545 A.2d at 1135–36; *Niemetz, supra,* 422 A.2d at 1373. As the Maryland Court of Appeals stated in *Mulkey, supra,* 560 A.2d at 27, "the exact date of the offense is not an essential element, and is not constitutionally required to be set forth." The courts have therefore tolerated some generality as to dates so long as the defendant has not suffered substantial prejudice.

The *Jackson* decision, *supra,* is the District of Columbia authority closest to the present case. In *Jackson,* the defendant was charged with seventeen counts of sexual abuse of children aged seven, eight and twelve over several different time frames in 1980 and 1981. The longest of these time frames was nine months. We held in *Jackson* that the failure of the indictment to allege specific dates did not render it unconstitutional, and that in light of "the child-complainants' inability to recall events by specific time and date, the indictment was more than adequate to safeguard appellant's rights." 503 A.2d at 1227. Although *Jackson* is distinguishable from this case in several respects, including the age of the complainants and the number of individual offenses with which the defendant was charged, the case lends some support to the government's contention that the indictment in the present case is constitutionally sufficient.

The facts of the cited cases from other jurisdictions vary, but several of the decisions involve situations quite similar to those now before us. The analysis of the issue by the Supreme Court of New Hampshire in *Lakin, supra,* is particularly instructive, for the nature of the charges, the time period covered by the indictment, and the age of the complainant are all comparable to the circumstances of the present case. Derek S. Lakin was convicted of aggravated felonious sexual assault upon a child who was between thirteen and sixteen years of age during the period of abuse. The indictment alleged that Lakin had performed the acts of sexual penetration "between May 1982 and February 1984." Lakin moved to dismiss the indictment for insufficient particularity. His

---

risk of a nonunanimous verdict inherent in a duplicitous count may be cured if the court gives a limiting instruction that requires the jury to find unanimously that the defendant was guilty with respect to at least one distinct act.

1A CHARLES ALAN WRIGHT, FEDERAL PRACTICE AND PROCEDURE § 145, at 83–85 (3d ed.1999) (footnotes omitted).

14. Or, in this case, the inability to recall the date of an incident.

motion was denied, and his subsequent conviction was affirmed upon the following grounds:

> The aggravated felonious sexual assault statute does not require proof of the exact date of the assault as an element. . . . A defendant therefore need only be informed that he must meet proof that he committed the assaultive acts at some time during a specified period. Where no defense is possible on the basis of the victim's age, or the statute of limitations, a defendant generally has no basis for complaining that the indictment fails to allege a precise date, absent a showing that the inexactness raises a possibility of prejudice specific to him. . . . Nor does the breadth of the period alleged provide grounds to fear the possibility of double jeopardy. Courts may tailor double jeopardy protection to reflect the scope of the time period charged in an earlier prosecution.

517 A.2d at 847 (citations omitted).

In *Mancinone, supra,* the defendant was charged with risking injury to two female juveniles by engaging in sexual activity with them "on divers dates between August 1982 and November 1984." The girls were approximately thirteen or fourteen years old at the time of the abuse. The defendant was convicted of these charges. He complained on appeal that the open-ended period of more than two years referred to in the charging document had effectively precluded him from presenting the defenses of alibi and impossibility. The court disagreed, noting that where, as in Mancinone's case, the offense was of a "continuing nature," the prosecution could not readily provide precise dates. The court specifically rejected Mancinone's constitutional contentions:

> Generally in such cases, as long as the information provides a time frame which has a distinct beginning and an equally clear end, within which the crimes are alleged to have been committed, it is sufficiently definite to satisfy the re-

quirements of the [S]ixth [A]mendment to the United States [C]onstitution . . . .

545 A.2d at 1136 (citations and internal quotation marks omitted). The court explained that in order to establish a constitutional violation, a defendant who has been convicted on the basis of an imprecise charging document must make "a clear and specific showing of prejudice to the defense," and that he cannot prevail "merely by establishing that the presentation of his defense may be more burdensome and difficult." *Id.* (citations, ellipsis and internal quotation marks omitted). Finally, the court noted that Mancinone, like Roberts in the present case, had denied engaging in the unlawful activity "whatever the dates." The court ruled that, under these circumstances, the "burdens and difficulties" posed by the imprecise charging documents were "not of the kind and magnitude to warrant reversal of [Mancinone's] conviction." *Id.*

In *Niemetz, supra,* the defendant was charged by information with sexually abusing his stepdaughter "on (or about) divers dates beginning in 1972 and continuing until August 1977," a period more than twice as long as that alleged in the present case. The victim was seventeen years old at the conclusion of the alleged abuse. Like K.L.W. in this case, the complainant had become the mother of the defendant's child. In addition, Niemetz' victim had had an abortion. The approximate dates of at least those sexual assaults which resulted in her pregnancy were thus reasonably ascertainable. The court nevertheless upheld the defendant's conviction, observing that precision in specifying the dates of particular incidents of molestation was not required where the conduct was of a continuing nature. 422 A.2d at 1373–74. The court did not

> believe that it would serve the ends of justice to permit a person to rape and otherwise sexually abuse his child with impunity simply because the child has failed to record in a daily diary the unfortunate details of her childhood.

*Id.* at 1373; *accord, Mulkey, supra,* 560 A.2d at 29–30 (quoting *Niemetz* ).

We are persuaded by these authorities that Roberts had constitutionally sufficient notice of the charges against him. We are aware of no authority in any jurisdiction which would support invalidation of Roberts' conviction for lack of notice on facts comparable to those here.

### D. *Conviction of uncharged offenses—Constructive Amendment.*

■ Roberts next contends that he was unconstitutionally convicted, both of carnal knowledge and of rape, "on the basis of facts not found by, and perhaps not even presented to, the grand jury which indicted him." *Russell, supra,* 369 U.S. at 770, 82 S.Ct. 1038. His argument in that regard is twofold. He claims first, that the indictment was not sufficiently specific to assure that he would be tried only for the offenses charged by the grand jury, and second, that the prosecutor constructively amended the indictment by introducing evidence of uncharged crimes and obtaining Roberts' conviction of them.

Given our construction of each count of the indictment as alleging a series of individual incidents rather than a single one, see Part II B, *supra,* and our conclusion that the indictment is not unconstitutionally vague, the first of these two contentions cannot prevail. "[T]wo or more acts, each of which would constitute an offense standing alone and which therefore could be charged as separate counts of an indictment, may instead be charged in a single count if those acts could be characterized as part of a single, continuing scheme." *Shorter, supra* note 14, 257 U.S.App. D.C. at 360, 809 F.2d 54 at 56. That is how the charging documents were framed in *Lakin, Mancinone,* and *Niemetz.* Here, as in *Shorter,* all of the evidence presented by the government related to sexual assaults on K.L.W. during the periods specified in the indictment.

For substantially the same reasons, we are likewise unpersuaded by Roberts' claim that the amendment was constructively amended. It is necessary, however, to explicate the theory on which Roberts bases this claim. With respect to his carnal knowledge conviction, Roberts relies on K.L.W.'s own testimony. K.L.W. told the jury at trial that she did not reveal to the government the specifics of the only incident identified in the bill of particulars until she spoke with a prosecutor who became involved in the case *after* the return of the indictment.[15] Thus, according to Roberts, the grand jury did not know about, and therefore could not have indicted him upon, the conduct that led to his conviction of carnal knowledge.

Roberts makes a different, though related, argument with respect to his conviction of rape. He points out, correctly, that the only incident identified in the bill of particulars as relating to the rape charge is one that occurred in October 1992. K.L.W. also claimed to have been raped in May 1992, however, and it was the alleged May rape that resulted in her pregnancy and in the subsequent birth of her daughter. The jury heard testimony regarding both of these incidents, and Roberts argues that the verdict as to the rape count may very well have been based on the alleged May 1992 sexual assault. Pointing to the fact that the May incident was not mentioned in the government's bill of particulars, Roberts reasons that it was not part of the indictment, that he therefore may have been convicted of an offense for which the grand jury did not indict him, and that the indictment had thus been constructively amended to charge the May incident.

■ If we were to accept Roberts' contention that each count of the indictment referred only to a single discrete incident, then we would be bound to agree with his claim of constructive amendment. Given our view that each count embraced a series of separate incidents, however, the evi-

---

**15.** K.L.W. did not personally testify before the      grand jury.

dence at trial corresponded to the grand jury's allegations. Although the specific details of the carnal knowledge incident specified in the bill of particulars had not been individually presented to the grand jury, that body heard ample evidence of the entire series of events of which that incident was a part. "Nowhere in the criminal law do we require all evidence presented at trial to be presented to the grand jury; it is custom and practice to present just enough to get the indictment." *United States v. Staggs*, 881 F.2d 1527, 1535 (10th Cir.1989) (Logan, J., concurring). Finally, the period of time alleged in Count Three embraced both of the rapes regarding which the jury heard evidence.

E. *The bill of particulars, variance, and prejudice.*

■ Notwithstanding our rejection of Roberts' claim of constructive amendment, we agree with him that the evidence presented by the prosecution at trial, at least as to rape, cannot readily be reconciled with the government's bill of particulars. The prosecutor there represented that the incident underlying the rape charge occurred in October 1992, and evidence of that offense was duly introduced at the trial. But as noted above, the trial jury also heard of a second alleged rape, namely, the one that took place in May 1992 and resulted in the birth of K.L.W.'s daughter. The prosecutor then asked the jury "to find [Roberts] guilty of rape, for when he raped her all of the times after she turned sixteen." The jurors were never told which was the charged offense.

The judge instructed the jury that Roberts had been charged with one count each of carnal knowledge and rape, that there had been evidence of more than one act, and that the jurors had to agree unanimously that all of the elements of carnal knowledge or rape had been proved on at least one occasion before they could convict Roberts of either count. There was no objection to this instruction or to the

consideration by the jury of alleged sexual assaults not identified in the bill of particulars.

■ "The function of a bill of particulars is to enable the accused to prepare for trial and to prevent surprise, and to this end the government is strictly limited to proving what it has set forth in it." *United States v. Murray*, 297 F.2d 812, 819 (2d Cir.), *cert. denied*, 369 U.S. 828, 82 S.Ct. 845, 7 L.Ed.2d 794 (1962). "Courts must therefore view with suspicion attempts by parties to adduce proof of facts which modify or contradict assertions recorded in their bill of particulars." *United States v. Glaze*, 313 F.2d 757, 759 (2d Cir.1963). In light of these authorities, Roberts might well have been in a position to insist, on the basis of the government's bill of particulars, that the jury be limited to consideration of his guilt or innocence only of the October rape. Had such a request been made on variance grounds, the trial judge might well have granted it.

But "it is well settled that a variance between the proof and the bill of particulars is not grounds for reversal unless the appellant is prejudiced by the variance." *Id.; see also United States v. Francisco*, 575 F.2d 815, 818 (10th Cir.1978). The court explained in *Francisco* that

[p]rejudice is normally considered to be present if there is danger [that] the accused will be prosecuted a second time for the same offense, or that he was so surprised by the proof that he was unable to prepare his defense adequately.

*Id.* at 819 (citations omitted). The court indicated that a defendant's failure to ask for a continuance may defeat a claim of surprise. *Id.*

In the present case, there was no prejudice. "[I]t can hardly be doubted that [Roberts] would be fully protected from again being put in jeopardy for the same offense[s], particularly when it is remembered that [he] could rely [not only upon the indictment but also] upon other parts of the present record in the event that

future proceedings should be taken against [him]." *Russell, supra,* 369 U.S. at 764, 82 S.Ct. 1038; *accord, Nichols v. United States,* 343 A.2d 336, 343 (D.C.1975); *Lakin, supra,* 517 A.2d at 847. We agree with the government that "[h]ere, the indictment and trial transcript would adequately protect [Roberts] against subsequent jeopardy for any act of sodomy, carnal knowledge or rape against complainant during the entire period alleged in the indictment." Indeed, we do not understand counsel for Roberts to be arguing to the contrary.

Roberts likewise has made no claim of surprise. At trial, he made no objection to the consideration of incidents not specified in the bill of particulars, nor did he request a continuance when they were mentioned. Moreover, this was Roberts' *second* trial. Although the transcript of his first trial is not before us, we are aware of no allegation by Roberts that he was surprised at his second trial by the introduction of evidence of incidents not disclosed at the earlier trial before Judge Duncan–Peters.

Given the lack of prejudice, "we do not believe that the law is or should be so preoccupied with theory that practical consequences must be disregarded." *Helm v. United States,* 555 A.2d 465, 469 (D.C. 1989). As the Supreme Court remarked in the context of a dispute over the sufficiency of an indictment, "[c]onvictions are no longer reversed because of minor and technical deficiencies which did not prejudice the accused." *Russell, supra,* 369

U.S. at 763, 82 S.Ct. 1038 (quoting *Smith v. United States,* 360 U.S. 1, 9, 79 S.Ct. 991, 3 L.Ed.2d 1041 (1959)). In this case, sloppy prosecutorial draftsmanship has created readily avoidable problems which are quite unrelated to Roberts' guilt or innocence or to the fairness of his trial, and the defects in the charging documents have enabled conscientious and resourceful defense counsel to mount plausible appellate challenges to Roberts' convictions. But "[a] criminal prosecution is more than a game in which the government may be checkmated and the game lost merely because its officers have not played according to rule." *McGuire v. United States,* 273 U.S. 95, 99, 47 S.Ct. 259, 71 L.Ed. 556 (1927); *see also United States v. Ceccolini,* 435 U.S. 268, 279, 98 S.Ct. 1054, 55 L.Ed.2d 268 (1978); *Robinson v. United States,* 697 A.2d 787, 791–92 (D.C.1997). A more precise indictment and a more accurate bill of particulars would certainly have simplified this case and served the interests of justice. We conclude, however, that these pleading deficiencies do not warrant reversal.

### III.

### CONCLUSION

Roberts' conviction for taking indecent liberties with a minor is vacated. See note 6, *supra.* His convictions for carnal knowledge and rape are

■ *Affirmed.*[16]

---

**16.** Roberts' final contention need not detain us long. Roberts testified at trial that he had sexual relations with K.L.W. on only one occasion and that K.L.W. was a voluntary participant in that encounter. Roberts asserted on direct examination that he never mentioned this consensual sex to anyone for several years because he was ashamed of his conduct. A police detective who interviewed Roberts testified, however, that Roberts denied ever having had sex with K.L.W. at all.

On cross-examination and in closing argument, the prosecutor focused heavily on the point that if Roberts' testimony were true, one would have expected him to tell his family and friends the truth about what had oc-

curred, and that Roberts would have told the police officer who questioned him that there had been no rape and that the sexual relations had been consensual. The prosecutor sought to show that Roberts only came up with the "consensual sex" theory after DNA testing had rendered implausible his earlier denial of *any* sexual relations with K.L.W.

With the exception of a single objection to a specific question, which was sustained, Roberts did not object to this entire line of inquiry and argument. Relying on *Doyle v. Ohio,* 426 U.S. 610, 619, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976), however, Roberts now asserts that the trial judge committed plain error by not intervening, *sua sponte,* and by failing to prohibit

RUIZ, Associate Judge, concurring:

I join the majority opinion in concluding that the indictment returned against Roberts was sufficient, and that the evidence presented at trial neither constructively amended the indictment nor impermissibly varied from it. That conclusion is possible in this case because, uncustomarily, we are aided by having a transcript of the grand jury hearing to inform us of what the grand jury in fact heard. With that information, we can confidently conclude that the ambiguous language of the indictment is properly read to include a series of discrete acts within two defined periods of time. In this case, the government permissibly chose to prosecute one of the incidents charged in each of the two time periods defined by the grand jury.

Where I part company with my colleagues is with characterizing challenges to the sufficiency of, or departures from, an indictment as a "technical" matter because it does not go to guilt or innocence or to the fairness of trial. *Compare ante* at 593,

with *Robinson v. United States,* 697 A.2d 787, 793–94 (D.C.1997) (Ruiz, J., concurring) ("[T]he grand jury is [not] a quaint technicality," but a "community-based check" on federal law enforcement power). The Constitution provides the right to be charged for serious crimes by indictment. *See* U.S. CONST. amend. V. That requirement was considered to insert a valuable check by peers against the power of the prosecution *and* of judges. *See Russell v. United States,* 369 U.S. 749, 770–71, 82 S.Ct. 1038, 8 L.Ed.2d 240 (1962). In exercising the judicial power that the grand jury clause was designed to limit, we must conform fully to the substantial purpose of that constitutional protection.

the cross-examination and closing argument of which Roberts now complains.

Much of the prosecutor's questioning related to the period that predated Roberts' receipt of advice or rights pursuant to *Miranda v. Arizona,* 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966). Some of it carried over to the post-advice of rights period. All of it at least arguably constituted a reasonable response to Roberts' exculpatory explanation of his silence on direct examination.

In any event, we must review the judge's failure to intervene on her own initiative under the "plain error" standard. Applying that standard to the record before us, we conclude that Roberts has shown neither that the alleged error was "obvious" nor that it resulted in a miscarriage of justice. *See, e.g., Coates v. United States,* 705 A.2d 1100, 1104–05 (D.C. 1998); *id.* at 1105 (Ruiz, J. concurring); *Hasty v. United States,* 669 A.2d 127, 134 (D.C.1995); *Hunter v. United States,* 606 A.2d 139, 142–46 (D.C.), *cert. denied,* 506 U.S. 991, 113 S.Ct. 509, 121 L.Ed.2d 444 (1992). Accordingly, we discern no basis for reversal.