**Leslie OLAFISOYE, Appellant**

v.

**UNITED STATES, Appellee.**

**No. 01–CM–566.**

District of Columbia Court of Appeals.

Submitted Dec. 3, 2002.
Decided Sept. 9, 2004.

William C. Claiborne, III, appointed by the court, was on the brief for appellant.

Roscoe C. Howard, Jr., United States Attorney at the time the brief was filed, and John R. Fisher, Roy W. McLeese, III, Catherine J. Motz, and Michael T. Truscott, Assistant United States Attorneys, were on the brief for appellee.

Before TERRY, Associate Judge, STEADMAN, Associate Judge, Retired,* and BELSON, Senior Judge.

TERRY, Associate Judge:

Appellant was charged with four counts of misdemeanor sexual abuse and one count of possession of marijuana. After a non-jury trial, he was found guilty on two of the four counts of misdemeanor sexual abuse and guilty on the marijuana charge. On appeal he raises several claims of error; we reject them all and affirm his convictions.

I

Appellant, the owner of a janitorial service company, had a contract to provide services at the Embassy of Botswana. While working there, he came into contact with Marie Yanick Cilaire, who had worked as an office cleaner at the embassy for the past twelve years. Ms. Cilaire testified that while she and appellant were both working at the embassy, he would sometimes touch her breasts when the two were in the elevator or the hallways. She told him to stop, but he complied only temporarily. These actions, she said, oc-

---

* Judge Steadman was an Associate Judge of the court at the time this case was submitted. His status changed to Associate Judge, Retired, on August 8, 2004.

curred sometime in late May or early June of 2000. In a separate incident in July of 2000, appellant put a vacuum cleaner hose up Ms. Cilaire's dress which touched her vaginal area. As he did so, he commented that his new vacuum cleaner was "powerful enough [to] vacuum [her] ass."

At first, Ms. Cilaire was hesitant to tell her supervisor about these incidents. However, after a threatening verbal exchange with appellant a month or so later, she finally reported his conduct to the supervisor. When the supervisor told Ms. Cilaire that she could not deal with the matter, Ms. Cilaire went to the police.

Between the time appellant initially grabbed Ms. Cilaire's breasts and the incident with the vacuum cleaner, she asked appellant to accompany her to see a loan officer about obtaining a mortgage. In explaining why she was willing to be in appellant's company even after his unwelcome touching of her breasts, Ms. Cilaire testified that appellant would apologize after each episode and that she never really took him seriously. After the vacuum cleaner incident and the heated verbal exchange, however, Ms. Cilaire felt that appellant had "transformed" and grew increasingly wary of him. She specifically stated that she "never" developed any kind of a personal relationship with appellant away from the job, and that she never told him where she lived or gave him her phone number.[1]

Sergeant Michael Baltzley of the United States Secret Service[2] became familiar with appellant's case after he spoke with Ms. Cilaire by telephone. Ms. Cilaire later went to Secret Service headquarters, where Sergeant Baltzley conducted a formal interview. He described her as "nervous and upset" during that interview when she recounted the events at the embassy.

After a warrant was issued for appellant's arrest, Sergeant Baltzley and Secret Service Officer Stretmader pulled him over as he drove out of the embassy parking lot. Officer Stretmader placed him in the police car and took him to the Metropolitan Police Third District station for questioning, while Sergeant Baltzley drove appellant's car to the Third District station so that appellant could use it when he was released. After parking the car on the street outside the station, Sergeant Baltzley looked under the seats for weapons. He found none, but he did find a metal container under the right front seat. Baltzley opened it and found a green leafy substance that appeared to be marijuana, whereupon he called the station house and requested a crime scene technician to come outside and conduct a field test on the substance in the container. Defense counsel stipulated that marijuana was found in the car, and both the marijuana and the container were admitted into evidence without objection.

Appellant testified that he never had anything more than a working relationship with Ms. Cilaire. He acknowledged going with her to apply for a mortgage and claimed that if he could help her obtain one, she said she would "make it up to [him]." Her mortgage application, however, was eventually denied. Appellant could not specifically remember whether he touched Ms. Cilaire's breasts, but he ac-

---

1. Another woman who worked at the embassy, who was also an acquaintance of Ms. Cilaire, testified about other indecent acts allegedly committed by appellant. However, because the court found that appellant and this second woman had formerly been in an intimate relationship, he was acquitted of the two misdemeanor sexual abuse charges relating to her.

2. Ms. Cilaire initially went to the Metropolitan Police to report appellant's behavior, but because these events took place at an embassy, the Secret Service became involved.

knowledged that "sometimes we play around.... If I touch her on the breast, it's one of those times we were having good times together." He denied ever touching Ms. Cilaire with a vacuum cleaner hose.

## II

Appellant argues that he should have been granted a jury trial because of the additional penalties of deportation and having to register as a sex offender that would be imposed if he were convicted of misdemeanor sexual abuse. He maintains that the availability of these penalties changed the nature of his offense from "petty" to "serious" and therefore required a jury trial.

■ The Sixth Amendment to the Constitution provides for a jury trial "in all criminal prosecutions." The Supreme Court has held, however, that while federal and state courts must provide jury trials for all "serious crimes," trials for offenses that are regarded as "petty" do not require the same treatment. *See Duncan v. Louisiana,* 391 U.S. 145, 158, 88 S.Ct. 1444, 20 L.Ed.2d 491 (1968). The factor that distinguishes a serious offense from a petty offense is the "maximum authorized period of incarceration." *Blanton v. City of North Las Vegas,* 489 U.S. 538, 541–542, 109 S.Ct. 1289, 103 L.Ed.2d 550 (1989). The Court in *Blanton* established a presumption that crimes punishable by incarceration of six months or less[3] were not deemed serious for jury trial purposes. *Id.* at 542–543, 109 S.Ct. 1289; *see Day v. United States,* 682 A.2d 1125, 1128 (D.C. 1996). This presumption can be rebutted only by a showing that "additional statutory penalties" elevate the crime from petty

to serious. *Blanton,* 489 U.S. at 543, 109 S.Ct. 1289.

Appellant's claim that he should have been granted a jury trial fails for two reasons. First, his assertion that he would be deported and would have to register as a sex offender is based on an incorrect reading of the applicable statutes. Second, even if appellant were subject to these penalties, the administrative or collateral consequences of conviction, unless they are considered an intrusive infringement on liberty, do not implicate one's constitutional right to a jury trial. *See, e.g., United States v. Nachtigal,* 507 U.S. 1, 5, 113 S.Ct. 1072, 122 L.Ed.2d 374 (1993) (holding that a sentence which included five years of probation was not an infringement on liberty that required a jury trial under the Sixth Amendment).

### A. Deportation

■ While appellant is correct that an alien[4] can be deported after being convicted of a crime of domestic violence, his actions in this case do not fit the definition which makes a person deportable. *See* 8 U.S.C. § 1227(a)(2)(E)(i) (2000). In defining the term "crime of domestic violence," this statute requires that the criminal act be committed "by a current or former spouse of the [victim] ... [or] an individual with whom the [victim] shares a child in common ... [or] an individual who is cohabiting with or has cohabited with [the victim] as a spouse." Appellant fits into none of these categories. In his brief appellant claims that he had an "intimate" relationship with Ms. Cilaire, but that type of relationship, without more, does not make a person deportable under the stat-

---

3. The maximum jail sentence for misdemeanor sexual abuse is 180 days. D.C. Code § 22–3006 (2001). The maximum for possession of marijuana is also 180 days. D.C. Code § 48–904.01(d) (2001).

4. It is apparently undisputed that appellant, although he has lived in this country for more than ten years, is not a United States citizen. The identity of his native country is not revealed in the record.

ute. Moreover, any type of intimacy was denied by both appellant and Ms. Cilaire in their testimony,[5] and there is no other evidence that they were intimate. Finally, even if appellant could be deported for his conviction, administrative deportation proceedings do not raise an otherwise petty offense to the level requiring a jury trial. *See Foote v. United States,* 670 A.2d 366, 372 (D.C.1996).[6]

### B. *Sex Offender Registration*

■ Appellant also claims that his conviction of misdemeanor sexual abuse required him to register as a sex offender under D.C. Code § 22–4014 and thus elevated his crime from "petty" to "serious," thereby necessitating a jury trial. Once again appellant misreads the relevant statute. Under D.C. Code § 22–4016(b)(3) (2001), a "misdemeanor offense committed against an adult" does not require registration unless sex offender registration was part of a plea agreement. Because Ms. Cilaire was a forty-two-year-old adult, and because appellant's conviction did not involve a plea bargain of any kind, his conviction imposes no obligation on him to register. His claim of entitlement to a jury trial on this ground is thus entirely without foundation.

### III

Appellant asserts that the trial court erred in rejecting his attempt to suppress the marijuana seized from his car. Defense counsel did not make a motion to suppress until the very day of trial, however, and when he sought to do so, his only stated reason for the delay was his discovery that the Supreme Court "yesterday" had granted certiorari in a case with allegedly similar facts.[7] Because the denial did not result in a violation of appellant's rights, and because the untimeliness was not based on any permissible exception to the requirement that motions be filed before trial, the court committed no error in refusing to allow appellant to make an untimely motion. *See, e.g., Brown v. United States,* 289 A.2d 891, 892–893 (D.C. 1972).

■ Both the D.C. Code and the Superior Court Criminal Rules require that motions to suppress be filed before trial. *See* D.C. Code § 23–104(a)(2) (2001); Super. Ct. Crim. R. 12, 47–I(c). The Code and Rule 12 do not prescribe a specific time for filing (each says only that a motion to suppress must be made "before trial" or "prior to trial"), but Rule 47–I(c) specifically states that in a non-jury misdemeanor case—such as this one—"all such motions shall be filed within ten days of

---

5. Ms. Cilaire testified that she had no personal relationship with appellant, and appellant testified that he never had anything other than a "co-employee relationship" with her.

6. Deportation is also possible under 8 U.S.C. § 1227(a)(2)(A)(i) (2000) if a defendant is convicted of a crime of moral turpitude *and* if "a sentence of one year or longer may be imposed." In this case, however, even if misdemeanor sexual abuse were considered a crime of moral turpitude (and we need not decide that issue here), the maximum sentence of imprisonment for that offense is only 180 days. See note 3, *supra.* Appellant would therefore not be subject to deportation under the moral turpitude provision.

7. Moving orally for leave to make a motion to suppress the marijuana, defense counsel told the court that he "did not file a written motion because [he] just found out yesterday that the Supreme Court has granted cert in a case that's got the same facts as this one ...." Counsel did not identify the case at the time, nor does he cite it in his brief on appeal. The government suggests in its brief that it may have been *Florida v. Thomas,* 532 U.S. 774, 121 S.Ct. 1905, 150 L.Ed.2d 1 (2001), but we decline to speculate. We note parenthetically that the Supreme Court, after granting certiorari in *Thomas,* unanimously dismissed the case for lack of jurisdiction without reaching the merits. *Id.* at 781, 121 S.Ct. 1905.

arraignment or entry of appearance of counsel, whichever date is later, unless otherwise provided by the court." Unless a defendant can show good cause for a failure to do so, exceptions are not permitted. D.C. Code § 23–104(a)(2); *see Duddles v. United States,* 399 A.2d 59, 64–65 (D.C.1979) (rejecting arguments substantially similar to those made here). Failure to file a motion to suppress before trial is treated as a waiver of any claim that the evidence was unlawfully seized, absent a showing of exceptional circumstances. *Id.* at 65; Super. Ct. Crim. R. 12(d).

■ The *Duddles* case has been on the books for over twenty-five years, and the criminal rules have been around even longer. Their time strictures are consistently enforced. *See, e.g., (Michael) Smith v. United States,* 561 A.2d 468, 471 (D.C. 1989); *Streater v. United States,* 478 A.2d 1055, 1058 (D.C.1984). Only in exceptional cases are motions to suppress heard at trial, *(Milton) Smith v. United States,* 295 A.2d 64, 65 n. 2 (D.C.1972), *cert. denied,* 411 U.S. 951, 93 S.Ct. 1932, 36 L.Ed.2d 414 (1973), and appellant has not shown that an exception exists. His only reason for not filing a motion prior to trial rests on the claim that the Supreme Court had recently granted certiorari in a case with similar facts, and he did not know what the law was. Such a claim is frivolous on its face. No court decision of which we are aware, in this jurisdiction or any other, has held that a grant of certiorari changes existing law. Even if the state of the law is arguably uncertain, simply granting certiorari does not alter or overrule current law.[8]

■ In any event, nothing about the discovery of marijuana in appellant's car warrants suppression. *See New York v. Belton,* 453 U.S. 454, 460–461, 101 S.Ct. 2860, 69 L.Ed.2d 768 (1981) (police may examine the contents of any container found inside the passenger compartment of a vehicle after a lawful arrest); *United States v. Harris,* 617 A.2d 189, 191–192 (D.C.1992); *see also Speight v. United States,* 671 A.2d 442, 454 (D.C.), *cert. denied,* 519 U.S. 956, 117 S.Ct. 375, 136 L.Ed.2d 264 (1996) (upholding admission, under inevitable discovery doctrine, of evidence discovered during search of car after lawful arrest). We see nothing in the record that even suggests that there might have been a valid ground for a motion to suppress, and thus no basis for appellant to claim that he was prejudiced by the trial court's refusal to let him file such a motion out of time. *See Duddles,* 399 A.2d at 64.[9]

## IV

Without citing anything other than the Fourteenth Amendment,[10] appellant claims that because a specific date was not stated in the charging information, that document was therefore unconstitutionally broad. This argument is meritless.

---

**8.** Given the requirement under Rule 47–I(c) that any motion to suppress needed to be filed ten days before trial, counsel's discovery one day earlier of a possibly relevant case is of no avail, since any motion should have been filed at least nine days before that.

**9.** Appellant also argues that the trial judge erred when he refused to allow him to renew his motion to suppress (more precisely, his motion for leave to move to suppress) during Sergeant Baltzley's testimony, which the pretrial motions judge had previously denied. However, the trial judge correctly denied appellant's renewed request on the ground that the motions judge's ruling was the law of the case. *Duddles* is dispositive on this point as well. *See* 399 A.2d at 64; *accord, e.g., Scales v. United States,* 687 A.2d 927, 937 (D.C. 1996).

**10.** We assume that appellant meant to cite the Fifth Amendment, and specifically its Due Process Clause, since the Fourteenth Amendment applies only in the several states and not in the District of Columbia. *See Bolling v. Sharpe,* 347 U.S. 497, 499–500, 74 S.Ct. 693, 98 L.Ed. 884 (1954).

▮▮▮▮ The two-part test for determining the validity of an indictment or information, against a claim that it is overly broad, is whether it gives the defendant adequate notice of the charges against him so that he can prepare a defense and whether, if he is later charged with a similar offense, he may successfully assert a claim of double jeopardy. *See Roberts v. United States,* 752 A.2d 583, 589 (D.C. 2000); *Craig v. United States,* 490 A.2d 1173, 1176 (D.C.1985). In general, when the indictment or information meets these standards, "it is immaterial 'whether it could have been made more definite and certain.'" *Roberts,* 752 A.2d at 587 (quoting *Hagner v. United States,* 285 U.S. 427, 431, 52 S.Ct. 417, 76 L.Ed. 861 (1932)). "Good pleading undoubtedly requires an allegation that the offense was committed on a particular day ... but it does not necessarily follow that the omission to state a particular day is fatal." *Roberts,* 752 A.2d at 589. Courts have generally tolerated non-specific dates in charging documents, so long as the defendant is not prejudiced. *Id.*

▮▮▮ There is no indication that appellant was prejudiced here. The information charged him with engaging in misdemeanor sexual abuse between May 22 and June 19, 2000, and again between July 1 and July 31, 2000. It also included the elements of the offense of misdemeanor sexual abuse and cited the relevant code provision that defined the offense. This gave appellant fair notice of the charges against him and informed him of the range of dates when the offenses were alleged to have taken place. Nothing more was constitutionally required. *See, e.g., Roberts,* 752 A.2d at 585 (affirming the constitutionality of the charging document when a period of over one year was alleged as the

period within which the offense was committed); *Jackson v. United States,* 503 A.2d 1225, 1226 (D.C.1986) (upholding an indictment when the alleged time of the offense spanned eighteen months). The government maintains that *Roberts* and *Jackson* are dispositive of this claim of error, and we agree. We discern no violation of appellant's due process rights.

V

▮▮▮▮ In reviewing appellant's final claim that the evidence was insufficient to establish his guilt beyond a reasonable doubt, this court must view the evidence in the light most favorable to the government, recognizing the court's role as trier of fact in weighing the evidence, determining witness credibility, and drawing reasonable inferences from the evidence. *E.g., Jones v. United States,* 716 A.2d 160, 162 (D.C.1998). Furthermore, the government "need not disprove every theory of innocence" in order to sustain a conviction. *Id.* Appellant bears the heavy burden of showing that the prosecution offered "'no evidence' upon which a reasonable mind could find guilt beyond a reasonable doubt." *Mihas v. United States,* 618 A.2d 197, 200 (D.C.1992). Finally, when the case is tried without a jury, as this one was, we may not disturb the trial court's findings "unless it appears that the judgment is plainly wrong or without evidence to support it." D.C. Code § 17–305(a) (2001). Guided by these familiar precepts, we hold that the evidence was sufficient to prove all the charges of which appellant was convicted.

*A. Misdemeanor Sexual Abuse*

▮▮▮ In order to prove misdemeanor sexual abuse, the government must show (1) that the defendant engaged in a "sexual act" or "sexual contact" as defined in D.C. Code § 22–3001,[11] and (2) that the defen-

---

11. The definition of "sexual contact" includes "the touching with any clothed or unclothed

dant knew or should have known that he did not have the complainant's permission to engage in that sexual act or sexual contact. *See* D.C. Code § 22–3006 (2001). Appellant's acts of touching of Ms. Cilaire's breasts with his hand and touching her genitalia with a vacuum cleaner hose clearly established these elements.

As for the touching of Ms. Cilaire's breasts, her testimony that she told him to stop but that, after apologizing, he would do it again couple of days later was sufficient to show that these touchings occurred without her permission. Appellant's intent to derive gratification from his actions is inferable from his own testimony in which he characterized the incidents as "good times." Indeed, a trier of fact might reasonably infer such intent from the nature of the act itself, at least when there was no suggestion that the touching was inadvertent or accidental. Concerning the vacuum cleaner incident, while appellant denied that it occurred at all, Ms. Cilaire stated that it did, and the court was entitled to accept her testimony as credible and reject appellant's testimony to the contrary. Appellant's comment that the hose was "powerful enough [to] vacuum [her] ass" was further evidence of his improper intent to gratify his own sexual desires.

### B. *Marijuana Possession*

Appellant also claims that the government failed to present enough evidence to convict him of possession of marijuana. He asserts that because the marijuana was found under the passenger seat and no evidence was introduced to prove that he owned the car, his conviction should be overturned. This argument also is without merit.

To obtain a conviction for possession of a controlled substance, the government must show that the defendant possessed such a substance and did so knowingly. *See* D.C. Code § 48–904.01(d) (2001); *Rivas v. United States*, 783 A.2d 125, 129 (D.C.2001) (en banc). When the defendant is not shown to have been in actual possession of the substance, the government must prove that he had constructive possession of the drugs, *i.e.*, the ability to exercise dominion or control over them. *See In re M.I.W.*, 667 A.2d 573, 575 (D.C.1995). Constructive possession may be proven by either direct or circumstantial evidence. *Moore v. United States*, 757 A.2d 78, 84–85 (D.C.2000). Determining whether constructive possession has been proven beyond a reasonable doubt requires a fact-specific inquiry into all the circumstances of the particular case. *See Rivas*, 783 A.2d at 131. When the evidence in this case is viewed in the light most favorable to the government, it is clear that appellant's conviction was based on sufficient evidence.

First, the marijuana was found in the car that appellant was driving just moments before his arrest, which was also the same car that witnesses testified they saw him drive on previous occasions. Moreover, no other passengers were in the car when appellant was arrested, a fact which tends to negate any inference that the marijuana might have belonged to someone else. Appellant argues that the government failed to prove the car was his, but such proof is not required; the fact that he was in possession of the car at the relevant time is the critical fact, regardless of who its owner was. Moreover, he did not tell the arresting officers that the car belonged to anyone else when they asked

body part or any object, either directly or through the clothing, of the genitalia ... [or] breast ... of any person with an intent to

abuse, humiliate, harass, degrade, or arouse or gratify the sexual desire of any person." D.C. Code § 22–3001(9) (2001).

him whether he would like the car impounded or driven back to the station house. On the proven facts, the court could reasonably find that appellant constructively possessed the marijuana which the police found in the car moments after he was arrested while driving it. *See, e.g., Carter v. United States*, 614 A.2d 542, 544 (D.C.1992).[12]

## VI

For all of the foregoing reasons, the judgment of conviction is

*Affirmed.*

12. Appellant also contends that the trial court impermissibly admitted other crimes evidence against him, contrary to the teaching of *Drew v. United States*, 118 U.S.App. D.C. 11, 15–16, 331 F.2d 85, 89–90 (1964), and its countless progeny. This argument is flawed because, as the government correctly points out, a close reading of the transcript reveals that the court struck any testimony that dealt with conduct outside the time frame stated in the information. There was no *Drew* violation.

Appellant also criticizes the trial court for allowing the prosecutor to ask leading questions during direct examination. This argument is also without merit because the questions at issue were not leading at all; rather, they were simply an effort by the prosecutor to focus the witnesses' attention on the relevant date or time period, which is entirely permissible. Asking a witness "what happened in late May and early June," for example, is not a leading question. *See, e.g., Bailey v. United States*, 831 A.2d 973, 984 n. 14 (D.C.2003); *see also* FED. R. EVID. 611(c) (leading questions are permissible on direct examination "as may be necessary to develop the witness' testimony").