Michael HOOKER, Appellant,

v.

UNITED STATES, Appellee.

No. 12–CM–427.

District of Columbia Court of Appeals.

Argued June 6, 2013.
Decided July 18, 2013.

Mindy A. Daniels for appellant.

John P. Mannarino, Assistant United States Attorney, with whom Ronald C. Machen Jr., United States Attorney, and Elizabeth Trosman and Colleen M. Kennedy, Assistant United States Attorneys, were on the brief, for appellee.

Before THOMPSON and EASTERLY, Associate Judges, and SCHWELB, Senior Judge.

THOMPSON, Associate Judge:

Following a bench trial before the Honorable Craig Iscoe, appellant Michael Hooker was convicted of two counts of misdemeanor sexual abuse of a child, based on evidence that the trial court found proved the government's charge that, on at least two occasions "between on or about August 1, 2008 and December 31, 2008," he engaged in "sexually suggestive conduct"[1] with a nine-year-old girl, S.T., in his apartment. In this appeal, appellant seeks reversal on the grounds that (1) the court erred in finding, on the basis of a retrospective competency examination, that appellant was competent to stand trial, and (2) the evidence at trial was insufficient to prove that he committed the charged offenses on or about the dates specified in the amended information. Appellant also identifies errors in the "Date[s] of Offense" shown on the judgment. For the reasons explained below, we affirm appellant's convictions, but remand for the trial court to correct the judgment.

---

1. D.C.Code § 22–3010.01 (2001).

## I.

### A. Background pertaining to the competency determination

Prior to appellant's trial, his then-counsel, Andrew Delehanty, filed a motion for a forensic screening to "determine [appellant's] competency to participate in the defense." The motion explained that during a telephone conversation in which counsel sought to prepare appellant for trial, appellant "launched into a monologue about the case and collateral matters that lasted over forty minutes." Each time counsel attempted to ask appellant a question, appellant "again started long rambling and unresponsive answers." Counsel asserted that it appeared to him that appellant was "not able to co-operate with his attorney, at least not in a fashion conducive to trial preparation" and "not able to focus on matters at hand."

On May 3, 2010, the Honorable Bruce D. Beaudin granted counsel's request for a forensic screening. On the same day, Dr. Renita Perkins, a psychologist with the District of Columbia Department of Mental Health ("DMH"), conducted the screening and submitted her report to the court. Dr. Perkins noted that appellant reported that he had been diagnosed with bipolar disorder and had been prescribed a mood stabilizing medication that was "not effective for him"; she "attempted to contact his current treatment providers but could not reach them prior to the submittal of [her] report." She observed, inter alia, that appellant's "conversation was mostly logical[ ] and coherent" but that his speech was "rapid in pace, ... becoming particularly elevated when discussing his case," and that he "required redirection on numerous occasions throughout the evaluation." She also reported that:

[Appellant] knew the nature and gravity of the charges against him and he was

familiar with the account described in the police report, but adamantly denied its validity. He demonstrated a basic and accurate knowledge of legal proceedings and the roles of various courtroom officials, including the function of a jury. He was able to discuss the various plea options available, including the concept of plea bargaining, and he seemed to have the capacity to make reasoned choices regarding plea options.... He understood the importance of cooperating with defense counsel and seemed to appreciate the adversarial nature of legal proceedings. He indicated however, that although he wished to work with his current attorney, he felt that his attorney "did not want to hear [him] out." Although [appellant] identified appropriate courtroom behavior, given his excessive speech and tangentiality, he may have some difficulty demonstrating this behavior during the legal proceedings.

Dr. Perkins opined that appellant was "incompetent to participate in court proceedings" and recommended that the court "wait 45 days before scheduling the next hearing," to "allow [appellant] time to enroll in and benefit from treatment[.]"

In the meantime, appellant's case had been certified for a non-jury trial to be handled by an available Superior Court judge, and Judge Iscoe volunteered to handle the trial, unaware that an issue had been raised about appellant's competency. On May 11, 2010, appellant's trial commenced and was completed. Neither Mr. Delehanty nor the prosecutor made mention of the competency screening or raised an issue of appellant's competency to stand trial.[2] As the court was unaware that a screening report had been filed, the court

proceeded to verdict and sentencing without either having ordered a full competence examination or having found that appellant was competent to stand trial, as required by D.C.Code § 24–531.03(c)(4)(A)–(B) (2006 Supp.).

Appellant appealed his conviction to this court (Appeal No. 10–CM–798) and then, through new counsel Mindy Daniels, sought summary reversal of his conviction, raising as one issue the trial court's failure to make a finding as to his competency to stand trial. Thereafter, the parties jointly asked us to remand the case to the trial court "for a determination of whether appellant was competent to proceed to trial." After we granted the remand motion, appellant filed in the trial court a December 22, 2010, "Motion for Finding of Incompetency Nunc Pro Tunc to May 3, 2010 [the date of Dr. Perkins's examination and report] and to Vacate Defendant's Convictions and Sentence." The motion argued that appellant should not have been "brought to trial eight days [after the filing of Dr. Perkins's report] without a finding of competency by the court" and asserted that the "trial court cannot now make a retroactive finding of competency."

On December 30, 2010, DMH psychologist Dr. Nancy Ingraham conducted a competency examination of appellant and opined that appellant was competent to participate in the ongoing proceedings as of the date of her report. Subsequently, at a January 6, 2011, status hearing, Judge Iscoe heard arguments on appellant's motion to vacate his conviction. He told the parties that he did not believe the record supported, and that he was not prepared at that time to find, "that an incompetent defendant was tried," specifically questioning whether the preliminary finding of in-

2. Mr. Delehanty later explained in an affidavit that, on May 3, 2010, when he called appellant to inquire about the preliminary competency examination, appellant informed him that Dr. Perkins had found him to be "competent" (a claim that Dr. Perkins denied during her testimony at the August 2, 2011, hearing described *infra*).

competence had been based on the proper legal standard. He decided to order a retrospective competency examination to determine whether appellant was competent at the time of trial. On February 3, 2011, Dr. Ingraham and Dr. Elizabeth Teegarden (also a DMH psychologist) conducted the retrospective examination and concluded (based on, *inter alia,* an interview with appellant and printed transcripts and an audio recording of the trial) that appellant was competent to stand trial on May 11, 2010.

The trial court denied both the request by appellant's counsel to find incompetency solely on the basis of Dr. Perkins's preliminary report[3] and the government's request to find without a hearing that appellant was competent at the time of trial on the basis of the retrospective competency evaluation report, but granted the request by appellant's counsel's for a hearing on the retrospective competency determination. At the hearing, Mr. Delehanty testified that appellant had talked "much less" on the day of trial than he had on the night before he requested the competency examination. Mr. Delehanty also answered affirmatively when asked, "Did you feel that the concerns that you had had previously about his lack of competence had been answered; in other words, did he appear different and competent to you?" Mr. Delehanty "didn't notice anything wrong with [appellant's] competency," and appellant "seemed to understand what was going on [at trial]" and was cooperative. Mr. Delehanty testified that appellant's

"go[ing] off on tangents" did not interfere with his "ability to be competent."

Dr. Perkins testified that she had been "really concerned" about appellant's ability to work with his attorney, given appellant's "tangential" and excessive speech. She agreed, however, that it "would not be unusual for someone [who] had excessive speech and tangentiality, to be found competent eight days later or to be competent for a trial[.]" Dr. Ingraham testified that she did "not necessarily" disagree with Dr. Perkins's preliminary report, and Dr. Teegarden explained that, not having herself interviewed appellant at the time of his trial, she found it difficult either to "agree or disagree" with Dr. Perkins's preliminary findings. While not criticizing Dr. Perkins's report, both Dr. Ingraham and Dr. Teegarden confirmed that it was their opinion, based on their retrospective assessment, that appellant had been competent at the time of trial. Following the hearing, Judge Iscoe issued a March 7, 2012, order in which he so found. Appellant now challenges Judge Iscoe's decision to order a retrospective competency examination, contending that the court "erroneously refused to immediately vacate the convictions and grant a new trial[.]" He also challenges the finding that he was competent to stand trial, arguing that the finding is not supported by the record.

## B. Analysis

■ We begin our analysis by identifying our standard of review.[4] Our case law recognizes that where an issue "is to be

3. During the proceedings on remand, appellant's counsel vigorously challenged the government's view that the purpose of the remand was "a retroactive competency examination" to determine whether appellant was competent at the time he stood trial. Counsel told the court that her position was that remand was in order for the court to make a "determination o[f] incompetency, based upon the [preliminary screening] report" and that it was not "appropriate to

have [appellant] screened again for purposes of a retroactive determination[.]"

4. Given that appellant (repeatedly) preserved his objection that the trial court should not have ordered a retrospective competency evaluation, one might think it beyond debate that our standard of review in this appeal is one of the standards we apply in cases of preserved error. During oral argument, however, we asked appellant's counsel whether

determined [by the trial court] on a case by case basis, according to the totality of the circumstances," the appropriate standard of review is for abuse of discretion. *Campbell v. Campbell*, 353 A.2d 276, 279 (D.C.1976). We have also held that "[w]hile retrospective determinations of competency are not always appropriate, their usefulness must be judged on a case by case basis[.]" *Pierce v. United States*, 705 A.2d 1086, 1091 (D.C.1997); *see also Eldridge v. United States*, 618 A.2d 690, 693 n. 3 (D.C.1992) (reviewing for abuse of discretion a claim that the trial court erred in denying a motion for a " 'limited retrospective hearing' " on the defendant's competency to plead guilty). Further, we have previously upheld findings made by a trial court based on a retrospective determination of the defendant's competence to stand trial, *see, e.g., Higgenbottom v. United States*, 923 A.2d 891, 898 (D.C.2007)— meaning that a retrospective determination is sometimes "within the range of permissible alternatives." *Johnson v. United States*, 398 A.2d 354, 365 (D.C. 1979). In addition, although appellant contends that this court's remand was for the

she was suggesting that appellant's argument should be considered and evaluated as a plain-error argument. We did so for two reasons. First, we recognized that appellant was arguing that, although his trial counsel did not object, it was "axiomatic" that he should not have been tried when his competency was in question; that Judge Iscoe's and Delehanty's record statements establish that they would not have been willing to proceed to trial on May 11, 2010, had they taken into account Dr. Perkins's report; and that allowing his conviction to stand would amount to "manifest injustice." Thus, focusing again on matters as they stood at the time of his conviction, appellant appeared to sound the themes of plain-error review. *See, e.g., Melendez v. United States*, 26 A.3d 234, 246 (D.C. 2011) (stating the plain-error standard requires a showing of "(1) error, (2) that is plain, (3) that ... affected [appellant's] substantial rights, and (4) that ... seriously affected the fairness, integrity, or public reputation of the judicial proceeding, i.e., a showing of manifest injustice or a miscarriage of justice."). Second, taking the argument as framed by appellant, we thought it important to at least consider whether this might be the rare case in which plain-error review could afford appellant relief that might not be available through review of his preserved claims.

We have concluded, though, that plain-error review is not appropriate here. Foremost among the reasons is that matters no longer stand as they did at the time of appellant's conviction; at the parties' joint request, we remanded to the trial court, and that court had an opportunity to consider (and rejected) appellant's argument that his conviction should be immediately vacated. In addition, "[u]nder the plain error standard", appellant has the burden of showing that "the *trial court's error* was 'plain' or 'obvious[.]' " *Perkins v. United States*, 760 A.2d 604, 609 (D.C. 2000) (emphasis added). As Judge Iscoe noted in his March 7, 2012, Order, "CourtView records for May 11 do not mention the incompetency finding[,]" but state instead, "Case transferred to Judge Iscoe for Trial." Appellant acknowledges that the court "was unaware" of Dr. Perkins's report. It is not clear that the plain-error standard has any application in these circumstances, which do not support a finding that the trial judge committed error by proceeding to trial.

And, in any event, we are satisfied that appellant is not prejudiced by our determination not to apply plain-error review. Appellant is correct that trial would not have gone forward on May 11, 2010, and thus would not have concluded in a guilty verdict on that day, if Judge Iscoe had been aware of the unresolved competency issue. But, we think, the appropriate way to apply the third prong of the plain-error test is to look more broadly to whether appellant can show that, upon timely review of Dr. Perkins's report and the follow-up prescribed by § 24–531.03(c)(4), the eventual outcome would likely have been different. For all the reasons discussed *infra*, we are persuaded that appellant cannot make that showing. For example, the record makes it doubtful at best that Judge Iscoe would have ordered the lengthy period of "restorative" outpatient treatment that Dr. Perkins recommended and that appellant has suggested would have delayed his trial and affected how he testified when trial got underway.

trial court to make a competency determination based solely on Dr. Perkins's report, the parties' joint motion sought a remand "for a determination of whether appellant was competent to proceed to trial" and did not by its terms purport to constrain the trial court's discretion as to how to make that determination. Our remand order followed suit, mandating only "proceedings consistent with the statements made in the [parties'] joint motion."

■■■ For all the reasons listed in the preceding paragraph, we conclude (1) that the trial court's determination about how to proceed to resolve the unusual situation with which it was faced upon remand was committed to its discretion, and (2) that we now must apply the deferential abuse-of-discretion standard in reviewing Judge Iscoe's decision to order a retrospective competency examination. Our review of his finding about appellant's competence, which is "largely a factual determination," is for clear error. *See Wallace v. United States*, 936 A.2d 757, 763 n. 11 (D.C.2007); *see also Bennett v. United States*, 400 A.2d 322, 325 (D.C.1979) ("A finding of competency will not be set aside upon review unless it is clearly arbitrary or erroneous.") (internal quotation marks omitted).

### 1. The court did not abuse its discretion by ordering a retrospective competency examination.

■■■ We have no difficulty concluding that Judge Iscoe's decision to order a ret-

rospective competency examination was a proper exercise of the court's discretion. At no point was the court required or even permitted to rely exclusively on the "incompetency" conclusion in Dr. Perkins's preliminary screening report; D.C.Code § 24–531.03 directs the trial court to "consider the report of the preliminary screening examination, any arguments made by the parties, and any other information available to the court," and then either to "[f]ind the defendant competent and resume the criminal case or transfer [the] proceeding[,]" or to "[o]rder the defendant to submit to a full competence examination." § 24–531.03(c)(4)(A)–(B).[5] Further, at the time Judge Iscoe ordered the retrospective examination, the time that had passed since appellant's trial was not so long as to call into question the feasibility of a retrospective examination. *Cf. Pierce*, 705 A.2d at 1090–91 (affirming trial court ruling that was based on retrospective competency examination conducted less than two years after the defendant's guilty plea). And, given the court's expressed (and valid) concern about whether Dr. Perkins's preliminary findings (which the court understood to reflect a primary focus on whether appellant "might act inappropriately at trial") corresponded to the legal standard for competence [6] and the court's own observations of appellant on the day of trial, the court would likely have abused its discretion had it given Dr. Perkins's preliminary report the great weight that appellant urges and failed to seek additional information.[7]

5. Thus, contrary to appellant's argument, Dr. Perkins's preliminary report was not "sufficient to find [appellant] incompetent." We also are not persuaded by appellant's suggestion that the fact that the government did not object to Dr. Perkins's report prior to trial means that it is now bound by her findings, as that would contravene the legislature's directive about how the court is to proceed when there has been a preliminary finding of incompetency. *See* § 24–531.03(c)(4)(A)–(B).

6. *See, e.g.,* D.C.Code § 24–531.01(1) (2006 Supp.) (providing that " '[c]ompetence' means that a defendant has sufficient present ability to consult with his or her lawyer with a reasonable degree of rational understanding and has a rational, as well as a factual, understanding of the proceedings against him or her[ ]").

7. The language of Super. Ct.Crim. R. 120(3) on which appellant relies—that a report from DMH indicating that a defendant is incompetent to stand trial "shall be sufficient for the

## 2. The trial court did not clearly err when it determined that appellant was competent to stand trial in May 2010.

 The record amply supports the trial court's finding that appellant failed to prove by a preponderance of the evidence that he was not competent to stand trial.[8] The court had before it the report by Drs. Teegarden and Ingraham, which stated that appellant "demonstrated understanding of the questions he was asked, seemed to have the ability to provide relevant, appropriate responses, and demonstrated the ability to remain focused and attentive throughout his court appearance," that his "thought process seemed organized," that he "seemed to have a factual and rational understanding of the charges against him," and that "it seemed apparent that he was able to assist his attorney with the case."[9] In crediting their opinion, the court remarked that their views were "entitled to great weight" because, in addition to reviewing appellant's files, they had studied the transcript and listened to the audio recording of his trial.[10] The court noted in addition its own "careful[ ] observ[ations]" at trial and its having seen "nothing to suggest that [appellant] was not competent."[11] Thus, the record reflects that

---

Court to make a finding as to whether the defendant is competent to stand trial, unless either party objects, in which case the Court shall hold a prompt hearing"—refers not to preliminary competency reports, but to full competency reports, and thus does not support appellant's position. We also note, but need not address, the government's argument that Rule 120 "arguably became unenforceable" after the enactment of the Incompetent Defendants Criminal Commitment Act of 2004, now codified at D.C.Code §§ 24–531.01—24–531.13 (2012), which, as the Superior Court stated in proposing to delete the Rule, "established a comprehensive framework for mental examinations of defendants, and ... obviated the need for a separate rule[.]" Superior Court of the District of Columbia, Notice of Proposed Amendments to Superior Court Rules of Criminal Procedure 47–1 and 120 (January 30, 2013), at 4.

8. "[T]he party asserting his incompetence has the burden of proving it by a preponderance of the evidence." *Hargraves v. United States*, 62 A.3d 107, 111 (D.C.2013).

9. Drs. Teegarden and Ingraham also reported that appellant "sounded as if he was able to comport himself appropriately during his appearance in court," directly addressing a point that had concerned Dr. Perkins.

10. The court also "fully credit[ed]" Mr. Delehanty's hearing testimony and affidavit statements that on May 10, 2010 (the night before trial), he had further conversations with appellant, "during which there were no apparent signs of mental problems"; that on the day of trial, he had "several conversa-

tions with [appellant] about the trial[,] and signs of mental problems ... were not apparent"; that appellant "appeared to have no difficulty assisting ... with his defense; that he had no concerns with [appellant's] competency during the trial; and that he knew [appellant] understood his legal options and understood the gravity of the charges." Although normally "[c]ounsel's opinion should receive significant weight since counsel, perhaps more than any other party or the court, is in a position to evaluate a defendant's ability to understand the proceedings," *Gorbey v. United States*, 54 A.3d 668, 691 n. 31 (D.C.2012) (internal quotation marks omitted), we discount these bases for the trial court's retrospective finding that appellant was competent. We do so because Mr. Delehanty, having inexplicably failed to bring this matter to the court's attention pre-trial, had a strong interest in saying that he discerned no competency issue.

11. Appellant has not persuaded us by the emphasis he places on the court's observation about appellant's "rapid, virtually nonstop" speech during his trial testimony, an observation the court made as part of its findings at end of trial on May 11 and which appellant claims "mirrored" Mr. Delehanty's pre-trial concerns and Dr. Perkins's findings. We are satisfied with Judge Iscoe's explanation that his remark "was not what Mr. Delehanty had described in his request for a forensic exam, which was the defendant talked non-stop and he could not get a word in edgewise." Judge Iscoe explained that he "didn't see that at all," but "saw a defendant who, in a very

rather than "arbitrarily disregard[ing], disbeliev[ing], or reject[ing]" Dr. Perkins's preliminary opinion, *Prost v. Greene*, 652 A.2d 621, 629 (D.C.1995) (internal quotation marks omitted), the court carefully weighed her findings against its own observations of appellant's mental state on the day of trial. Further, as the court was made aware from the testimony of both Dr. Ingraham and Dr. Perkins, even if it is assumed *arguendo* that Dr. Perkins's preliminary conclusion was correct, nothing in her findings negated the possibility that appellant regained competence during the eight-day period leading up to his trial.

■ "[O]nce there is some basis in the record for the judge's refusal to accept an expert's conclusion, we will not pit our judgment against that of the finder of fact who saw and heard the witness testify." *Id.* (internal quotation marks omitted). Where, as here, "the trial court was presented with [at most] two permissible views of the evidence as to competency[,][t]he court's choice between them cannot be deemed clearly erroneous." *Wal-*

*lace*, 936 A.2d at 770 (alterations, citations, and internal quotation marks omitted).

## II.

■ Appellant's remaining argument is that the government failed to establish that the charged offenses occurred "between on or about August 1, 2008 and December 31, 2008," as charged in the amended information. He emphasizes that the prosecutor was "unable to direct S.T. to the timing of the alleged [events]," and he points to, *inter alia*, the evidence that (then 11–year–old) "S.T. did not know what grade she was in when the events occurred," "could not understand the prosecutor's inquiry of whether the incidents with [appellant] occurred before or after she visited [a] doctor in May 2009," and did not know whether she was nine years old (and knew only that she was "not ten years old" and not eleven) at the time of the alleged incidents. We conclude that the government's evidence nevertheless was sufficient to prove offenses "on a date reasonably close to the one alleged" in the amended information. *Lazo v. United States*, 54 A.3d 1221, 1229 (D.C.2012).[12]

careful, measured fashion, answer[ed] all the questions that were asked" and who, on cross-examination, fit the "sort of classic instance of somebody, a fast talker, [who] when confronted with difficult questions, attempts to talk their way out of it" to "deflect blame from himself." He further explained that he saw no "sign of [appellant's] inability to understand the question," "inability to comport himself to proper behavior even," or "inability to have a rational, factual understanding of the charges against him or the nature of the proceedings," "nothing consistent with mental illness," and "nothing to suggest that he was incompetent."

We similarly are not persuaded by appellant's argument that his statement to Mr. Delehanty that Dr. Perkins "told him he was competent, when that was not true" was indicative of his inability to assist counsel, or by appellant's argument that his (at times) "self-defeating" trial testimony shows that he was incompetent to stand trial. *Cf. Gorbey*, 54 A.3d at 680 (noting that "bizarre and irrational behavior cannot be 'equated with mental

incompetence to stand trial' "); *see also id.* at 685–86 (rejecting the argument that Gorbey's trial testimony that doubtless "caused the trial court (and the jury) to conclude that [he] was dissembling" signaled that he "might be incompetent to stand trial," and reasoning that the testimony "showed, instead, that [he] understood the charges against him" and the need to try to counter the government's proof).

12. Appellant moved for judgment of acquittal at the close of the government's case and then renewed his motion at the close of all the evidence, after he had testified and called his wife to testify in his defense. Therefore, in considering the sufficiency of the evidence to convict, "we may consider its sufficiency in the light of *all* the evidence introduced." *Franey v. United States*, 382 A.2d 1019, 1022 (D.C.1978) (emphasis in original); *see also Hawthorne v. United States*, 476 A.2d 164, 168 n. 10 (D.C.1984) ("Since appellant ... introduced evidence in his defense after the denial of his motion at the close of the government's

■ " 'When [a charging document] charges that the offense occurred 'on or about' a certain date, . . . a defendant is on notice that a particular date is not critical.' " *Id.* at 1229. "Therefore, '[t]he evidence will conform to the [charging document] . . . if it establishes that the offense was committed on a date reasonably close to the one alleged.' " *Id.* Further, particularly in a case involving a young victim of sexual assault, and especially where the victim is also intellectually immature, "courts have consistently given prosecutors and grand juries leeway in terms of the particularity required in [a charging document]." *Roberts v. United States,* 752 A.2d 583, 589 (D.C.2000). That is because, we have recognized, "[a] young victim of rape or sexual molestation often cannot be expected to recall exact dates and times, and this is especially true where . . . [appellant's] wrongful conduct allegedly made [the complainant] afraid to report the abuse contemporaneously." [13] *Id.*

Here, even without the evidence in the defense case, the evidence permitted the trial court to infer that the events S.T. described took place on dates between May 2007 and early 2009. S.T. testified that appellant had sexual contact with her "every time" she went to his house. S.T.'s mother estimated that S.T.'s visits to appellant were in 2007 or when S.T. was "about eight" years old. As the prosecutor explained in responding to defense counsel's argument that the dates specified in the information were "too vague," S.T.'s testimony that she was not 10 or 11 years old at the times she visited appellant's apartment "rule[d] out anything after April [6], 2009" (S.T.'s tenth birthday).

That conclusion was also supported by the testimony of S.T.'s mother and aunt, each of whom testified that S.T. first reported appellant's conduct in April or May of 2009, and by S.T.'s testimony that she delayed reporting the incidents with appellant.

The evidence presented during the defense case more squarely placed the incidents reasonably close to the dates alleged in the amended information. Appellant's wife testified that she began dating appellant in 2008, that appellant began living with her in her house in February 2009, and that prior to that she saw S.T. at appellant's apartment, unaccompanied by her mother. From that testimony, the trial court expressly inferred that appellant "had full access to his apartment throughout the time period that's at issue, certainly throughout 2008[,]" and could also reasonably infer that at least one of S.T.'s visits to appellant's apartment was in 2008. Finally, appellant testified that sometime between October and November 2008, S.T. visited him twice at his apartment; that "[t]he first time that [S.T.] came over" to his apartment, he introduced her to his wife and that on another occasion, he "brought [S.T.] over . . . to visit . . . on her account"; and that around October or November 2008, he and his wife "left [his] apartment" and "took [S.T.] home to her mother." He added that "nine out of 10 [times] . . . [S.T.'s mother] always c[a]me there with [S.T.]," thus confirming that S.T. on occasion visited him alone.

■ The conflicts in the testimony did not require the court to reject the govern-

case, he assumes the risk that his evidence will bolster the government's case to support a conviction.").

13. Here, the court observed that S.T. appeared "to be somewhat below the intellect

. . . and knowledge one would expect for a fifth grader and seemed immature for her age." The court also noted S.T.'s testimony that she was "too scared to tell anyone" about the incidents with appellant because she was "afraid her mom would whoop her."

ment's theory that the charged offenses occurred "between on or about August 1, 2008 and December 31, 2008." Rather, the court was entitled to "reconcile such inconsistencies," *Lazo,* 54 A.3d at 1230, by "determin[ing] credibility, weigh[ing] the evidence, and draw[ing] justifiable inferences of fact[.]" *Gee v. United States,* 54 A.3d 1249, 1272 (D.C.2012) (internal quotation marks omitted). And although the range of dates mentioned in the evidence as a whole was broader than the range of dates in the amended information, it was not so broad as to require the trial court to hold that the government had failed to meet its burden of proof. *Cf. Jackson v. United States,* 503 A.2d 1225, 1226–27 (D.C.1986) (holding that the indictment "was sufficient to inform appellant of the charges against him" even though it "set[ ] out four different time frames within a period of eighteen months in which the offenses occurred"); *Roberts,* 752 A.2d at 587 (upholding conviction against challenge that the indictment was "too general and vague" where the timeframes specified in counts one and three of indictment were one year and "more than nineteen months," respectively).

■ Finally, we are satisfied that appellant suffered no substantial prejudice from the range of dates in the amended information or in the government's evidence. *Lazo,* 54 A.3d at 1228 (explaining that "some generality as to dates" is acceptable "so long as the defendant has not suffered substantial prejudice"). After moving for judgment of acquittal, appellant's counsel asserted, without offering any supporting arguments, that the government's failure to provide more specific dates prevented him from presenting an alibi defense (and appellant reasserted that claim at oral argument before this court). But appellant has pointed to nothing in the record that suggests that he actually intended to present alibi evidence; for example, he never proffered that there were specific dates or periods in the August to December 2008 period when he was out of town or did not have what the court called "full access to his apartment." We also note that the events complained of were originally charged as having occurred "between on or about January 1, 2008 and December 31, 2008," and that it was in response to appellant's motion for a bill of particulars that the government filed the amended information, narrowing the range of dates. Thereafter, appellant made no further motion for particulars. On this record, we conclude that the information gave appellant "adequate notice of the charges against him so that he c[ould] prepare a defense[.]" *Id.* at 1227.

## III.

Appellant points out, and the government agrees, that the dates of offense specified in the judgment are incorrect. The dates listed are June 25, 2009, and January 1, 2008, with respect to counts one and two, respectively. At the January 6, 2011, hearing, the trial court, too recognized the error, and deemed it a clerical error. We conclude that a remand is in order for the limited purpose of enabling the trial court to correct the erroneous dates. *See* Super. Ct.Crim. R. 36 ("Clerical mistakes and errors in judgments … which arise from oversight or omission may be corrected by the Court at any time …").

## IV.

For the foregoing reasons, we affirm appellant's convictions but remand to the trial court for clerical correction of the judgment as discussed above.

*So ordered.*